UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| LOUISIANA GENERATING LLC, and<br>NRG ENERGY, INC.<br><br>Plaintiffs,<br><br>v.<br><br>ILLINOIS UNION INSURANCE COMPANY,<br><br>Defendant. | CIVIL ACTION. No. |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, Louisiana Generating LLC ("LaGen") and NRG Energy, Inc. ("NRG"), by their counsel, file the following complaint for declaratory judgment against Illinois Union Insurance Company ("Illinois Union"), and allege and state as follows:

### NATURE OF THE ACTION

1. This is an insurance coverage action stemming from a complaint filed in the United States District Court for the Middle District of Louisiana by the United States against LaGen, and a complaint-in-intervention against LaGen in the same action filed by the Louisiana Department of Environmental Quality ("LDEQ"), alleging violations of the Clean Air Act ("CAA"), 42 U.S.C. § 7401, *et seq.*, and corresponding provisions of the Louisiana State Implementation Plan ("SIP") set forth in the Louisiana Administrative Code, and seeking an order requiring LaGen to remedy the alleged violations of the CAA and Louisiana SIP, to take action to mitigate alleged illegal emissions arising from past violations, and to take "other appropriate actions to remedy, mitigate, and offset harm to the public health and the environment" caused by alleged violations of the CAA and Louisiana SIP.

2. LaGen and its parent company, NRG, seek a declaration that Policy No. G23877399 001 issued by Illinois Union provides coverage for both defense and indemnity costs stemming from the United States' and LDEQ's complaints against LaGen.

## PARTIES

3. Plaintiff LaGen, a subsidiary of NRG, is a Delaware corporation with its principal place of business in New Roads, Louisiana.

4. Plaintiff NRG is a Delaware corporation with its principal place of business in Princeton, New Jersey.

5. Defendant Illinois Union is an Illinois corporation with a principal place of business in Chicago, Illinois.

## JURISDICTION AND VENUE

6. This Court has jurisdiction on the basis of diversity of citizenship, pursuant to 28 U.S.C § 1332, because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $ 75,000.00 in value, exclusive of interest and costs.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1332, because a substantial portion of the events occurred in this district, the property that is subject to this action is located within this district, and a related action is already pending in this district, *United States v. Louisiana Generating, LLC*, Civil Action No. 09-100.

8. Furthermore, Illinois Union has agreed in its policy that "[i]f the insured requests, [Illinois Union] will submit to the jurisdiction of any court of competent jurisdiction."

## FACTUAL BACKGROUND

### The Underlying Claim: United States v. Louisiana Generating, LLC

9. LaGen is the operator and majority owner of the Big Cajun II power plant, a fossil fuel fired electric utility steam generating plant in New Roads, Louisiana ("Big Cajun II"). Big Cajun II comprises three electric generating units, known as Unit 1, Unit 2, and Unit 3. LaGen owns 100% of Units 1 and 2 and 58% of Unit 3. LaGen acquired its interest in Big Cajun II and began operating the plant on April 1, 2000.

10. The United States Environmental Protection Agency ("EPA") sent LaGen Notices of Violation ("NOVs") dated February 15, 2005, and December 8, 2006, alleging certain violations of the CAA and the Louisiana SIP at the Big Cajun II plant.

11. The NOVs described the alleged violations as arising from major modifications performed in 1998 and 1999 that caused "significant net emissions increases of $SO_2$ and/or $NO_2$ from the Plant." The NOVs also state that, pursuant to statute, the EPA Administrator could issue an order requiring compliance or bring a civil action for the alleged violations.

12. On February 11, 2009, the United States filed a complaint against LaGen for alleged violations of the CAA and Louisiana SIP at the Big Cajun II plant. Attached as Exhibit A is a copy of the complaint filed by the United States commencing the action styled *United States v. Louisiana Generating, LLC*, Civil Action No. 09-100 (M.D. La.) ("EPA Action").

13. On February 18, 2010, LDEQ moved to intervene in the EPA Action for purposes of filing a complaint-in-intervention. On February 19, 2010, the Court granted LDEQ's intervention motion and entered the LDEQ complaint-in-intervention on the record. Attached as Exhibit B is a copy of the complaint-in-intervention ("LDEQ Action") filed by LDEQ in *United States v. Louisiana Generating, LLC*, Civil Action No. 09-100. LDEQ brought its action

pursuant to the citizen suit provision of the CAA, 42 U.S.C. § 7604, but the substantive allegations and claims are essentially identical to the allegations and claims in the EPA Action.

14. The EPA and LDEQ Actions allege that Units 1 and 2 of the Big Cajun II plant were the subject of major modifications undertaken by the prior owner of Big Cajun II in 1998 and 1999. The EPA and LDEQ Actions further allege that the prior owner failed to apply for and obtain a permit for such modifications prior to commencing construction as required under the prevention of significant deterioration ("PSD")[1] provisions of the CAA and the Louisiana SIP.

15. The EPA and LDEQ Actions allege that since LaGen became the owner of Units 1 and 2 at Big Cajun II, LaGen has operated Units 1 and 2 without having or seeking a PSD permit for the 1998 and 1999 modifications, in violation of the CAA and the corresponding Louisiana SIP provisions. Specifically, the EPA and LDEQ Actions allege that LaGen was required to obtain and operate in compliance with a PSD permit establishing BACT and associated emissions limitations.

16. The EPA and LDEQ Actions further allege that LaGen failed to submit a complete application for a Title V operating permit for Big Cajun II and failed to include a compliance plan incorporating BACT requirements.

---

[1] PSD requirements apply, in part, to "major modifications" at existing major sources of emissions of certain identified pollutants. Where applicable, the PSD provisions impose on the owner or operator of a source a pre-construction obligation to obtain a PSD permit from the appropriate regulatory authority prior to commencing construction. If such a permit is required, the owner or operator must satisfy several requirements prior to commencing construction, including a determination of the applicable best available control technology ("BACT") to be included in the permit. See 42 U.S.C. § 7475(a). A BACT determination can be made only by the authorized permitting authority and must be based on a case-by-case evaluation that considers energy, environmental, and economic impacts.

17. The EPA and LDEQ Actions ask the Court to order LaGen not only to correct the alleged violations, but to remedy and mitigate the damages allegedly caused by the pollution that arose from the alleged violations at the Big Cajun II plant.

18. Specifically, the United States and LDEQ seek various forms of relief, including an order requiring LaGen to:

(a) "remedy its past violations by, among other things, requiring the defendant to install and operate, as appropriate, BACT at Units 1 and 2 of the Big Cajun Power Plant, for each pollutant subject to regulation under the Clear Air Act";

(b) "surrender emission allowances or credits to offset and mitigate the illegal emissions under the PSD and the Louisiana Title V Operating Permits Program";

(c) "take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Clean Air Act alleged above." *See* Exh. A, EPA Complaint at page 19; Exh. B, LDEQ Complaint-in-Intervention at page 19.

19. LaGen disputes all of the claims alleged in the EPA and LDEQ Actions and contends that no relief should be granted. LaGen has moved to dismiss portions of the EPA and LDEQ Actions on multiple grounds, and those motions have been taken under advisement by the Court pending additional submissions by the parties. The Court has entered a case management schedule that provides for bifurcation of the case into separate liability and remedy phases. Discovery in the liability phase is ongoing, with the close of fact discovery set for October 15, 2010. No trial date has been set, but a trial on liability is anticipated in the Summer of 2011.

**Illinois Union Policy**

20. Illinois Union issued a Premises Pollution Liability II Insurance Policy ("Illinois Union Policy") to NRG with a policy period of January 22, 2009 to January 22, 2012 for "New

5

Pollution Conditions" and a policy period of January 22, 2009 to January 22, 2019 for "Pre-Existing Pollution Conditions." NRG and LaGen incorporate the Illinois Union Policy by reference herein. A copy of the Illinois Union (Policy PPL G23877399 001) is attached as Exhibit C.

21. NRG is the First Named Insured and LaGen is listed as a Named Insured in the Illinois Union Policy. *See* Exh. C, Endorsement 004 and Item 1 at page 1.

22. After a $3,000,000 "self-insured retention" is satisfied by the insureds' payment of defense costs and/or liabilities, the Illinois Union Policy provides $50,000,000 in coverage for defense costs and liabilities. *See* Exh. C, Items 1 and 2 at page 1.

23. The insuring agreement in the Illinois Union Policy provides:

> The Insurer agrees to pay on behalf of the "insured" for coverage(s) provided, as identified on the Declarations for:
>
> A. New Pollution Conditions
>
> "Claims," "remediation costs," and associated "legal defense expenses," in excess of the "self-insured retention," as a result of a "pollution condition" on, at, under, or beyond the boundaries and that migrated from the "covered locations(s)," provided the "claim" is first made, or the "insured" first discovers such "pollution condition" during the "policy period." Any such "claim" or discovery must be reported to the Insurer, in writing, during the "policy period" or any applicable "extended reporting period."
>
> The coverage afforded under this Section **I.A.** only applies to "pollution conditions" that first commence, in their entirety, on or after the policy inception date shown in Item **2.a.** of the Declarations.
>
> B. Pre-Existing Pollution Conditions
>
> "Claims," remediation costs," and associated "legal defense expenses," in excess of the "self-insured retention," as a result of a "pollution condition" on, at, under, or beyond the boundaries and that migrated from the "covered location(s)," provided the "claim" is first made, or the "insured" first discovers such "pollution condition" during the "policy Period." Any such "claim" or

discovery must be reported to the Insurer, in writing, during the "policy period" or any applicable "extended reporting period."

The coverage afforded under this Section **I.B.** only applies to "pollution conditions" that first commenced, in whole or part, prior to the policy inception date shown in Item **3.a.** of the Declarations.

*See* Exh. C, page 1.

24. The Illinois Union Policy also defines the following relevant terms:

(a) "Claim" means "the assertion of a legal right, including but limited to a 'government action(s)', suits or other actions alleging responsibility or liability on the part of the 'insured' for 'bodily injury', 'property damage', or 'remediation costs' as a result of 'pollution conditions' to which this insurance applies." *See* Exh. C, page 3.

(b) "Bodily injury" "means physical injury, illness, disease, mental anguish, emotional distress, or shock, sustained by any person, including death resulting therefrom." *See id.*

(c) "Pollution condition" means "the discharge, illicit abandonment of materials by a third-party, dispersal, release, escape, migration or seepage of any solid, liquid, gaseous or thermal irritant, contaminant or pollutant . . . on, in, into, or upon land and structures thereupon, the atmosphere, surface water or groundwater." *See* Exh. C, page 4.

(d) "Property damage" includes "[p]hysical injury to, or destruction of, tangible property owned by third parties, including all resulting loss of use of that property . . . ." *See id.*

(e) "Remediation costs" means "reasonable expenses incurred to investigate, quantify, monitor, mitigate, abate, remove, dispose, treat, neutralize, or immobilize 'pollution conditions' to the extent required by 'environmental law.' 'Remediation costs' shall also include:

7

1. Reasonable legal cost, where such cost has been incurred by an 'insured' with the written consent of the Insurer; and

2. Reasonable expenses required to restore, repair or replace real or personal property, to substantially the same condition it was in prior to being damaged during the course of responding to a 'pollution condition(s)'."

*See* Exh. C, page 4.

25. The EPA and LDEQ Actions are covered liabilities based on the terms and conditions in the Illinois Union Policy.

26. The EPA and LDEQ Actions constitute "claim[s]" as defined in the Illinois Union Policy because the Actions assert "legal right[s]" based on allegations that LaGen violated certain provisions of the CAA and Louisiana SIP and is liable for, among other things, property damage to natural resources, bodily injury, and remediation costs allegedly caused by LaGen's violations.

27. The EPA and LDEQ Actions allege a "pollution condition" at the Big Cajun II plant. Illinois Union acknowledged the claims at Big Cajun II as a "pollution condition" when it was included in the Schedule of Known Conditions Endorsement to the Policy. *See* Exh. C, Endorsement 003.

28. Specifically, the Schedule of Known Conditions Endorsement provides that "[t]he "insured" and the Insurer hereby agree that the "pollution conditions(s)" identified within the documents listed in the Schedule of Known Conditions (Documents) below have been disclosed to the Insurer prior to the inception of this policy." *See* Exh. C, Endorsement 003.

29. A report prepared by Shaw Environmental is listed in the Endorsement. That report discussed the two NOVs sent by the EPA to LaGen. *See id.*

30. Further, Big Cajun II is listed as a covered location in the Illinois Union Policy. *See* Exh. C, Endorsement 001.

31. The EPA Action was filed on February 11, 2009, and therefore was "first made" during the "policy period." The LDEQ Action was filed on February 19, 2010, and therefore was "first made" during the "policy period."

32. The allegations in the EPA and LDEQ Actions arise from the alleged violations first made in the NOVs, sent on February 15, 2005 and December 8, 2006, which were specifically listed in the Schedule of Known Conditions Endorsement and thus were deemed to be first made during the policy period. *See* Exh. C, Endorsement 001.

33. Illinois Union is also responsible for defense costs stemming from the EPA and LDEQ Actions. The Illinois Union Policy provides that "[t]he Insurer will have the right and the duty to defend the 'insured' against a 'claim' to which this insurance potentially applies." *See,* Exh. C, page 2. Based on the terms and conditions in the Illinois Union Policy, LaGen is entitled to defense and indemnity costs for the EPA and LDEQ Actions.

**Illinois Union Denies NRG's and LaGen's Claim for Insurance Coverage**

34. NRG and LaGen tendered the EPA Action to Illinois Union on February 20, 2009.

35. By letters dated July 6, 2009, December 16, 2009, and July 16, 2010, Illinois Union informed LaGen and NRG that Illinois Union believes it owes no insurance coverage for any defense or liabilities arising out of the EPA Action against LaGen.

36. Illinois Union asserts that the Policy does not afford coverage to LaGen for the EPA Action because the United States' Complaint: does not constitute a "claim"; is not about the creation of a "pollution condition"; and the remedy sought by the United States does not fall within the definition of "remediation costs."

37. Illinois Union also asserts that the only two forms of recovery afforded under the CAA are fines and injunctive relief. As such, Illinois Union contends that the United States has no authority to recover "damages" caused by "bodily injury" or "property damage," and the United States cannot order LaGen to pay for "remediation costs" as defined in the Illinois Union Policy.

## CLAIM FOR RELIEF

(Declaratory Judgment 28 U.S.C. § 2201, *et seq.*)

38. NRG and LaGen reallege and incorporate by reference herein each allegation set forth in Paragraphs 1 through 37.

39. Illinois Union has contended it has no duty to defend or indemnify LaGen in connection with the EPA and LDEQ Actions.

40. NRG and LaGen have complied with all terms and conditions contained in the Illinois Union Policy, except to the extent their performance has been or is excused by Illinois Union.

41. Illinois Union has a duty to defend LaGen because the EPA and LDEQ Actions allege claims pursuant to which LaGen could be required to mitigate and/or compensate for harm caused by past emissions from 2000 to the filing of the EPA Action.

42. Illinois Union is obligated to pay any liability LaGen incurs in the EPA and LDEQ Actions to mitigate and/or compensate for harm caused by past emissions from at least 2000 to the filing of the EPA Action.

43. By denying insurance coverage to its insureds, Illinois Union has failed to honor the totality of its obligations under the Illinois Union Policy.

44. An actual controversy exists between Illinois Union and NRG and LaGen concerning the matters alleged herein.

45. NRG and LaGen seek a judicial determination that the Illinois Union Policy provides coverage for the EPA and LDEQ Actions, and that Illinois Union is obligated pay LaGen's costs of defending the EPA and LDEQ Actions when those costs exceed $3,000,000.

**PRAYER FOR RELIEF**

WHEREFORE, NRG and LaGen respectfully request that the Court enter judgment against Illinois Union as follows:

46. A declaration that Illinois Union is obligated to defend LaGen in the EPA and LDEQ Actions and to pay defense cost in excess of $3,000,000 because the EPA and LDEQ Actions allege claims that are covered under the Illinois Union Policy;

47. A declaration that Illinois Union is obligated to pay any liability LaGen incurs in the EPA and LDEQ Actions to mitigate and/or compensate for harm caused by past emissions;

48. An award of attorneys' fees and costs incurred by LaGen and NRG in bringing this action and any such other relief deemed appropriate by this Court.

**JURY TRIAL DEMANDED**

Dated: August 9, 2010    Respectfully submitted,

By: _____
G. William Jarman (#7238)
Linda S. Akchin (#17904)
KEAN MILLER HAWTHORNE D'ARMOND
MCCOWAN & JARMAN, LLP
One American Place
301 Main Street, Suite 1800
Baton Rouge, Louisiana, 70801
Telephone: (225) 387-0999
Facsimile: (223) 388-9133


John E. Heintz
Marla Kanemitsu
Shavon J. Smith
DICKSTEIN SHAPIRO LLP
1825 Eye Street, N.W.
Washington, DC 20006-5403
Telephone: (202) 420-2200
Facsimile: (202) 420-2201

Attorneys for
LOUISIANA GENERATING LLC and
NRG ENERGY, INC.