UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LOUISIANA GENERATING LLC, | * | CIVIL ACTION |
| and NRG ENERGY, INC. | * | |
| | * | |
| VERSUS | * | NO. 10-516-RET-SCR |
| | * | |
| ILLINOIS UNION INSURANCE | * | |
| COMPANY | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**REPLY TO PLAINTIFFS' OPPOSITION MEMORANDUM AND
SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ILLINOIS UNION'S MOTIONS**

**MAY IT PLEASE THE COURT:**

The instant Reply is submitted in response to Plaintiffs' Opposition to Illinois Union's

Rule 12(b)(3) Motion to Dismiss, Transfer or Stay [Doc. No. 18] and in further support of said

Motions filed by Illinois Union [Doc. No. 8, *et seq.*], by special and limited appearance.

**LAW AND ARGUMENT**

Illinois Union initially emphasizes that under clear Fifth Circuit precedent, where parallel

federal actions are involved, the court in which the first action was filed determines which of the

two cases should proceed.  *See* Save Power Ltd. v. Syntek Finance Corp., 121 F.3d 947, 950 (5th

Cir.1997); and Mann Mfg., Inc., v. Hortex, Inc., 439 F. 2d 403, 407 (5th Cir. 1971).  Here,

Plaintiffs concede not only that the New York Action was the first filed of the two competing

federal suits [Doc. No. 18, Page 12 of 34], but also that the New York suit "involves

substantially the same subject matter that comprises all or a material part of the subject matter of

the instant suit" [Doc. No. 2-6], rendering the arguments in Plaintiffs' opposition brief misplaced

since the first-filed rule requires that the court of the first-filed New York Action decide the

issues raised by Plaintiffs herein. Plaintiffs' action in this suit was improperly filed by Plaintiffs

in knowing violation of the governing forum selection clause (which requires Plaintiffs to

"comply with all requirements necessary" to give the New York court jurisdiction). (Exhibit 1, Policy, IX. General Conditions, I. Jurisdiction and Venue; Exhibit 2 [New York Rec. Doc. 8-7, Page 20 of 25]). Furthermore, the exact issues presented herein are currently pending in the first-filed New York Action, which is a court of proper venue pursuant to the governing forum selection clause. Under these circumstances, Fifth Circuit authority dictates the Court should in its discretion either dismiss, transfer or stay this second filed action. In deference to the Southern District of New York pursuant to the first-filed rule, Illinois Union requests this Court either dismiss or transfer this action.

Notwithstanding this, as Plaintiffs' opposition brief is littered with factual inaccuracies and misstatements of law, for the sake of completeness, Illinois Union addresses below the points focused upon by Plaintiffs.

**I.     THE PARTIES' CONTRACTUALLY AGREED FORUM SELECTION CLAUSE IS VALID AND ENFORCEABLE AND SHOULD NOT BE SIDE-STEPPED**

This action should be dismissed, transferred or stayed based on the first-to-file rule or 28 U.S.C. § 1404(a). The forum selection clause was agreed by the parties, is the law between the parties and is valid and confers proper jurisdiction over the parties herein in New York.

**A.     Endorsement No. 13 Is Not A Waiver of Choice of Venue**

Plaintiffs maintain that Illinois Union has waived any objection to their choice of venue pursuant to Endorsement No. 13, which states, "[i]f the insured requests, the company will submit to the jurisdiction of any court of competent jurisdiction." To the contrary, the Service of Suit clause serves only to evidence Illinois Union's agreement to submit to **personal jurisdiction**. Moreover, it is well-settled that a Service of Suit clause does not allow an insured to block an insurer's otherwise valid first-filed federal action for declaratory relief, as Plaintiffs seek to do, nor does it operate as a complete waiver of any objection to venue.

Plaintiffs' reliance on City of Rose City v. Nutmeg Ins. Co., 921 F.2d 13 (5th Cir. 1991) and Shrimp Louisiana Gulf, L.L.C., v. Scottsdale Ins. Co., 2007 WL 4291146, (E.D.La. 2007), to suggest that the policyholder can select the forum is woefully misplaced. City of Rose and Shrimp Louisiana Gulf, L.L.C. are readily distinguishable, inasmuch as they involve situations in which the insured had filed suit first in state court, and the insurer subsequently sought to remove the action to the corresponding federal court. The Fifth Circuit agreed that a Service of Suit clause may estop an insurer from subsequently removing an action to federal court because the Service of Suit clause prevents objection to the first-filed state court action. City of Rose, 921 F.2d at 15; Shrimp Louisiana Gulf, LLC, 2007 WL 4291146 at *2.

The Fifth Circuit's rationale in those cases, despite Plaintiffs' faulty contentions, actually supports Illinois Union's position. Illinois Union first filed suit in the Southern District of New York, only after which Plaintiffs instituted the proceedings in this Court. Illinois Union's choice of venue in the first filed suit should stand, as revealed by the following discussion.

The factual scenario presented here is analogous to that of International Ins. Co. v. McDermott Inc. 956 F.2d 93 (5th Cir. 1991), a coverage dispute involving ten policies of umbrella and excess liability insurance issued by International Insurance Company and U.S. Fire Insurance Company, to the defendant, McDermott, Inc., all of which contained a Service of Suit clause nearly identical to that contained in Endorsement No. 13 of Illinois Union's Policy. McDermott made a formal demand on International on January 3, 1991, giving International thirty days to make payment; however, the thirty day deadline passed without payment by International. Id. On February 28, 1991, International and U.S. Fire filed a declaratory judgment action in the United States District Court for the Eastern District of Louisiana. Id. at 95. Subsequently, on March 15, 1991, McDermott filed an action in state court in Jefferson County,

3

Texas. Id. McDermott then moved to dismiss the federal suit on the ground that the Service of Suit clause contained in the policy gave the insured the right to select the forum. Id.

McDermott considered whether the Service of Suit clause operates to allow the insured to block the carrier's otherwise valid federal action for declaratory judgment. Id. **The court in McDermott expressly recognized that the Service of Suit clause does not prevent the insurer from bringing its own declaratory judgment action, in a forum of its choosing.** In doing so, the court distinguished the City of Rose v. Nutmeg case relied upon by Plaintiffs:

> In a strict sense, Nutmeg holds only that a Service of Suit clause like the one at issue there prevents an insurer from removing an action that the insured files in state court. Nutmeg certainly does not hold that a Service of Suit clause prevents the insurer from bringing an action of its own against the insured. Moreover, Nutmeg deals only with disputes raised (and complaints filed) by the *insured*. **Nutmeg has nothing to say about complaints filed by the *insurer*. Indeed, the Service of Suit clause itself speaks only to actions brought by the insured. Thus, when the action is first instituted by the insurer, the Service of Suit clause simply has no application**. (Emphasis added).

Id. Refusing to allow the insured to manipulate the Service of Suit Clause to deprive the insurer of its right to seek a declaratory judgment, the Fifth Circuit vacated the judgment of the district court and allowed the insurer's first-filed suit to proceed. Id.

Thus, Plaintiffs' arguments with respect to the Service of Suit Clause are wholly without merit. According to controlling Fifth Circuit authority, the Service of Suit clause simply has no application when the action is first instituted by the insurer, as it was here, in the mutually agreed upon forum of New York.

**B.    The Jurisdiction Clause Applies to New York State and Federal Courts**

Plaintiffs also seek to avoid the effect of the forum selection clause by arguing that the clause does not allow suit in federal court. In attempting to restrict the forum selection clause to

4

New York state courts in order to invalidate the Southern District of New York as a valid forum, Plaintiffs improperly insert the word "court" into the clause, as evidenced in their Opposition, which states "[w]hile the United States District Court for the Southern District of New York sits in New York, it is not a court '*of* the State of New York.'" [Doc. No. 18, Page 16 of 34].  In actuality, the Policy language reads:  "It is agreed that in the event of the failure of the Insurer to pay any amount claimed to be due hereunder, the Insurer and the "insured" will submit to the jurisdiction of the State of New York and will comply with all requirements necessary to give such court jurisdiction." (Exhibit 1, Policy, IX. General Conditions, I. Jurisdiction and Venue). On its face, then, the Policy's forum selection clause is not limited to "courts of the State of New York," but, rather, it applies to "jurisdiction" within the State of New York, which is inclusive of both state and federal courts.  *See* Phoenix Global Ventures, Inc., v. Phoenix Hotel Assoc., Ltd., 2004 U.S. Dist. LEXIS 20977, 2004 WL 2360033 (S.D.N.Y. Oct. 19, 2004); and Reliance Ins. Co. v. Six Star, Inc., 155 F. Supp. 2d 49 (S.D.N.Y. 2001).

Plaintiffs essentially argue (without support) that the forum selection clause should be read as relating to sovereignty as opposed to geography, a distinction long recognized by New York courts.  *See* City of New York v. Pullman, Inc., 477 F. Supp. 438, 442-43 (S.D.N.Y. 1979). Contrary to Plaintiffs' argument, a forum selection clause should be read in terms of imposing a geographical limitation, unless it speaks expressly in terms of limiting jurisdiction to state courts. Pullman, 477 F. Supp. at 442-43.  *See Also* Universal Commodity Servs., Inc., v. Murphy Road Recycling, LLC, 2009 U.S. Dist. LEXIS 60150, *4-5, 2009 WL 1850986 (E.D.N.Y. June 18, 2009) (holding that clause requiring suit "shall be brought in New York State" was geographic and did not limit suit to state courts); Cronin v. Family Educ. Co., 105 F. Supp. 2d 136, 138 (E.D.N.Y. 2000).

The decision in <u>Yakin v. Tyler Hill Corp.</u>, 566 F.3d 72 (2d Cir. 2009), supports this as the only reasonable reading of the forum selection clause.  There, the forum selection clause stated "[i]t is agreed that the venue and place of trial of any dispute that may arise out of this Agreement … shall be in Nassau County, New York." <u>Id</u>. at 74.   In interpreting the clause, the court held that "[h]ad there been a federal court located in Nassau County at the time of this litigation, remand would have been improper." <u>Id</u>. at 76.  In other words, the Second Circuit read the clause as imposing a limitation on geography rather than one on sovereignty.

It follows that where a provision does not limit venue to a particular court, or to courts of a particular sovereignty (i.e., courts of the State of New York), the provision must be read as imposing only a geographical limitation.  Just as the forum selection provision in <u>Yakin</u> would have allowed the matter to proceed in any state or federal court located within Nassau County, so too must the forum selection clause in this case be read as allowing the matter to proceed in any state or federal court located within the State of New York, since the clause provides the parties "will submit to the jurisdiction of the State of New York."  (Exhibit 1, Policy, IX. General Conditions, I. Jurisdiction and Venue).

The Southern District of New York addressed a virtually identical forum selection clause in <u>Reliance Ins. Co. v. Six Star, Inc.</u>, 155 F. Supp. 2d 49 (S.D.N.Y. 2001), which read:  "the Company and the INSURED will submit to the jurisdiction of the State of New York and will comply with all the requirements necessary to give such court jurisdiction." <u>Id</u>. at 53.  Thus, the insurance policy in <u>Reliance</u> had the same key language as in the policy herein, namely, that in the event of dispute, the parties agreed to "submit to the jurisdiction of the State of New York." The <u>Reliance</u> Court, in relying on the first-filed rule to deny defendant's motion to dismiss in

favor of a competing lawsuit in Florida, let stand a federal suit on language virtually identical to the forum selection clause in this case. Id. at 60. The same result should lie herein.

Plaintiffs further argue that if the first sentence of the forum selection clause can be read as including New York's federal courts (i.e., read in terms of geography as opposed to sovereignty), then the second sentence of the provision addressing removal would be superfluous. [Doc. No. 18, Page 16 of 34]. This argument is erroneous. The sentence does not serve the purpose of conferring jurisdiction in a federal court – such jurisdiction already is conferred by the first sentence. Rather, the second sentence serves the purpose of clarifying that by agreeing to submit to the jurisdiction of the State of New York, which includes its state and federal courts, Illinois Union does not waive its right to remove a case to a New York federal court where it is appropriate to do so. The second sentence plainly speaks to situations in which the insured initially files suit in a New York State Court but the insurer decides to exercise its right to pursue the action in a New York Federal Court, expressly preserving the insurer's right of removal. While the right of removal may have been implicit in the first sentence, the second sentence makes this point explicit, not ambiguous. Further, the contemplation of removal to federal court indicates the clause included federal courts as well. If the insurer is expressly given the right to remove suits to federal court, it seems ridiculous to suggest the suit could not have been initiated there.

Accordingly, the forum selection clause unambiguously confers jurisdiction on the Southern District of New York. NRG, and all Named Insureds under the Policy, including LaGen, contractually agreed that jurisdiction would be proper in New York. The clause is valid and enforceable and should be applied as written, conferring jurisdiction on the New York court in which Illinois Union first-filed suit.

## II. THE FIRST-FILED RULE CLEARLY GOVERNS THIS MATTER AND APPLIES TO GIVE THE NEW YORK ACTION PRIORITY

### A. The New York Action Does Not Constitute An Improper Anticipatory Suit

In an effort to circumvent application of the first-filed rule, Plaintiffs argue that the rule is inapplicable because the New York Action was an improper anticipatory filing. However, Plaintiffs have failed to (and indeed cannot) come forth with even a scintilla of evidence establishing that Illinois Union's decision to file a declaratory judgment suit in the Southern District of New York constitutes "compelling circumstances" which would justify abrogation of the first-filed rule under the facts of this case. *See* Mann Mfg., Inc., v. Hortex, Inc., 439 F. 2d 403, 407 (5th Cir. 1971). As the Fifth Circuit recognized in Sherwin-Williams Co. v. Holmes County., 343 F. 3d 383, 391 (5th Cir. 2003), the filing of every lawsuit requires forum selection, and federal declaratory judgment suits are inherently anticipatory. Id. "A proper purpose of Section 2201(a) is to allow potential Defendants to resolve a dispute without waiting to be sued or until the statute of limitations expires." Id. As such, the mere filing of a declaratory judgment action in a federal court in anticipation of other litigation is not in itself improper anticipatory litigation or otherwise abusive "forum shopping." Id. at 391, 397. Rather, the inquiry as recognized by the Fifth Circuit is whether the declaratory judgment action was filed for an "improper or abusive" reason, other than selecting a forum or anticipating related litigation. Id. at 391. Merely filing a declaratory judgment action does not constitute an improper anticipatory filing or otherwise abusive forum shopping, particularly under facts in this case where the contractually agreed forum selection clause provides for a New York venue. Id. In other words, it should have come as no surprise to NRG and LaGen that Illinois Union would choose the forum plainly identified in the Policy to litigate an obligation that Illinois Union believes it does not owe.

Thus, Plaintiffs' suggestion that <u>Mission Ins. Co. v. Puritan Fashions Corp.</u>, 706 F.2d

599, 602 (5th Cir.1983), supports a general proposition that courts routinely dismiss insurers'

declaratory judgment actions in favor of policyholders' parallel actions, even when insurers are

the first to file suit, is flatly wrong.  As a Louisiana court recently recognized, "[t]his Court is not

aware of any authority that supports the proposition that an insurer is barred from invoking

jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage,"

which is essentially what Plaintiffs are arguing here.  <u>Clarendon America Insurance Co. v. CM</u>

<u>General Contractors, Inc.</u>, 2009 WL 136028, *4 (W.D.La. 1/20/2009) (the mere filing of an

anticipatory declaratory judgment action does not require dismissal by the federal court).

Moreover, Plaintiffs' reliance on <u>Mission Ins. Co.</u> is clearly misplaced since the case is

factually inapposite.  There, the Fifth Circuit concluded that the district court acted within its

discretion in considering the anticipatory nature of the first-filed declaratory judgment suit where

the suit was filed immediately after the plaintiff received notice of imminent legal action from

the defendant, and caused the defendant to delay filing suit by representing that it was

considering the merits of the claim and granting the defendant an extension of the statute of

limitations.  Plaintiffs here concede by silence, as they must, that they had not threatened suit,

and filed in this Court only upon learning of Illinois Union's New York Action eleven days later.

The Fifth Circuit in <u>Sherwin-Williams</u> also distinguished <u>Mission Ins. Co.</u> on grounds

that the court in <u>Mission Ins. Co.</u> concluded that the declaratory judgment plaintiff used the

federal declaratory judgment statute and the defendant's inability to file an earlier state court suit

for the sole purpose of controlling the state law that would apply (as the substantive provisions of

the laws of the two competing venues differed significantly).  No concerns for such "improper

procedural fencing" exist in this case because Plaintiffs were in no way precluded from

9

instituting suit against Illinois Union and in fact had ample opportunity to commence suit in the venue of their choice following Illinois Union's denial of coverage on July 6, 2009, over one year prior to Illinois Union's commencement of the New York Action on July 29, 2010; and because there were no improper efforts to dictate which law would apply inasmuch as the application of  New York law was contractually agreed by the parties upon purchase of the insurance policy and will apply regardless in which venue this suit proceeds.  [Doc. No. 18-2, Page 28 of 55, Plaintiff's Exhibit 3 to Declaration of Mark L. Johnson].

The remaining district court cases relied upon by Plaintiffs are also factually distinguishable and clearly do not support Plaintiffs' position.  Plaintiffs cite Hartford Accident & Indemnity Co. v. Hop-On International Corp., 568 F. Supp. 1569 (S.D.N.Y. 1983), for example, for the proposition that the first-filed rule does not apply to an insurer's preemptive and anticipatory declaratory action.  [Doc. No. 18, Page 20 of 34].  Critical to the court's decision to abstain from the exercise of jurisdiction in deference to the state-court proceeding was that "[t]he filing of the proof of loss by [the insured] essentially told [the insurer] that, if it did not pay [the insured's] claim within sixty days, [the insured] would sue to recover under the policy."  Id. at 1572.  It was "[i]n anticipation of that suit and before [the insured] could sue under the contract [that the insurer] brought [the] declaratory judgment action."  Id.  That is, "Hartford filed [the] action during a period when the terms of the insurance contract precluded [the insured] from bringing suit."

By contrast, in this case, over one and a half years had elapsed between the time Plaintiffs filed their First Notice of Loss with ACE/Illinois Union and the time Illinois Union filed the New York Action.  (*See* Exhibit 1; and Doc. No. 18-2, Page 26 of 55, Plaintiff's Exhibit 2 to Declaration of Mark L. Johnson, First Notice of Loss Form).  The New York Action was also

filed over one year after ACE USA, Inc., on behalf of Illinois Union, advised Plaintiffs that it had completed its coverage investigation and determined that Plaintiffs were not entitled to coverage under the Policy. (*See* Exhibit 1; and Doc. No. 18-2, Page 28 of 55, Plaintiff's Exhibit 3 to Declaration of Mark L. Johnson, ACE denial of coverage letter dated July 6, 2009).  Nothing under the insurance contract or otherwise barred Plaintiffs from bringing suit during this one year period, and Plaintiffs have not suggested otherwise.  (Exhibit 1, Policy).  Accordingly, Hartford is factually inapposite and under no interpretation supports Plaintiffs' position that the New York Action constitutes an improper anticipatory suit.  The remaining district court opinions relied upon by Plaintiffs from Texas, Indiana and North Carolina are likewise inapplicable and do not overcome controlling Second and Fifth Circuit jurisprudence.

Notably, the Second Circuit is even more stringent than is the Fifth as it requires a direct threat of litigation against the insurer or engagement in "manipulative or deceptive behavior" by the insurer to satisfy the "special circumstances" exception to the first-filed rule, none of which has been alleged, much less established in this case.  *See* Employers Insurance of Wausau v. Fox Entertainment Group, Inc., 522 F3d. 271, 276 (2d Cir. 2008)("District courts in this Circuit have recognized that, in order for a declaratory judgment action to be anticipatory, it must be filed in response to a direct threat of litigation that gives specific warnings as to deadlines and subsequent legal action").

Moreover, the undisputed facts and evidence are clearly insufficient to establish that Illinois Union instituted the New York Action for any "improper or abusive" reason.  As the exhibits submitted in support of the Declaration of Mark L. Johnson evidence, which Illinois Union adopts by reference in the interests of judicial efficiency, NRG filed a proof of loss on February 20, 2009.  [Doc. No. 18-2, Page 26 of 55, Plaintiff's Exhibit 2 to Declaration of Mark

L. Johnson, First Notice of Loss Form).  Illinois Union disclaimed coverage, outlining the specific bases on which Plaintiffs' claim for coverage, defense and indemnity was denied, by letter dated July 6, 2009.  [Doc. No. 18-2, Page 28 of 55, Plaintiff's Exhibit 3 to Declaration of Mark L. Johnson, ACE denial of coverage letter dated July 6, 2009).  Thereafter, and in response to a challenge to its coverage determination, ACE on behalf of Illinois Union issued two additional position letters, steadfastly maintaining its declination of coverage.  [Doc. No. 18-2, Page 38 of 55, Plaintiff's Exhibit 5 to Declaration of Mark L. Johnson, ACE denial of coverage letter dated December 16, 2009, and Page 49 of 55, Plaintiff's Exhibit 7 to Declaration of Mark L. Johnson, ACE denial of coverage letter (through New York counsel) dated July 16, 2010).

Accordingly, for the duration of the 1 ½ year communications between Illinois Union and Plaintiffs, Illinois Union never wavered from its coverage determination and denial of defense and indemnity in respect of Plaintiffs' claim despite challenges to this determination, and commenced the New York Action on July 29, 2010, over one year after initially denying coverage.  Moreover, no evidence of any kind has been adduced to show that Illinois Union at any time anticipated being sued by Plaintiffs, that Plaintiffs overtly threatened suit, that any extension of any kind with regard to the filing of suit was granted or that there was any improper motive behind Illinois Union's declaratory judgment suit, because there simply was none.

Plaintiffs attempt to fashion support for their position by suggesting that it was not until July 16, 2010 that Illinois Union sent a letter to LaGen setting forth Illinois Union's position.  This is incorrect.  As the documentary evidence unequivocally establishes, Illinois Union's coverage position was clearly communicated over one year earlier when the original denial of coverage letter was issued on July 6, 2009.  [Doc. No. 18-2, Page 28 of 55, Plaintiff's Exhibit 3 to Declaration of Mark L. Johnson].  ACE/Illinois Union's correspondence of July 16, 2010 was

simply a response to Plaintiffs' letter which articulated why Plaintiffs disagreed with the bases for the coverage denial.  [*See* Doc. No. 18-2, Page 49 of 55, Plaintiff's Exhibit 7 to Declaration of Mark L. Johnson; and Doc. No. 18-2, Page 42 of 55, Plaintiff's Exhibit 6 to Declaration of Mark L. Johnson].

    Plaintiffs' complaint that Illinois Union delayed scheduling a meeting with Plaintiffs to discuss their challenge is neither relevant nor correct.  The chain of communications between Illinois Union and Plaintiffs clearly evidence it was Plaintiffs who delayed the process from the beginning, since it was not until December 9, 2009, five months after Illinois Union issued its declination, that Plaintiffs' broker first attempted to provide any substantive reasons for Plaintiffs' disagreement with the denial of coverage and urged ACE to reconsider its position.  [*See* Doc. No. 18-2, Page 35-55, Plaintiff's Exhibit 4 to Declaration of Mark L. Johnson].

    Illinois Union filed the New York Action for the simple and appropriate reason that it wanted a ruling on Plaintiffs' demand for a defense in the Enforcement Action before Plaintiffs' self-insured retention was exhausted.  (Exhibit 2, Stella Decl. at ¶ 9).  Delaying suit until exhaustion of the self-insured retention, or until Plaintiffs got around to doing so first, would have unnecessarily required Illinois Union to choose between taking the risk of violating a duty to defend if it was wrong or paying for a defense it does not owe.  Illinois Union thus exercised its right reasonably, and elected to commence suit in New York based on the Policy's forum selection clause.  (Exhibit 2, Stella Decl. at ¶ 9).  Incidentally, Plaintiffs' contention that all Illinois Union insurance policies contain a New York choice of law provision is not substantiated and thus not properly before this Court.  Insureds, particularly sophisticated entities such as NRG, often negotiate such provisions.  Plaintiffs offer no evidence on this Motion suggesting that they were precluded from negotiating here.

In sum, even if Plaintiffs' rendition of facts, as favorably as they have attempted to construe them, were true, which they are not, they do not establish that the New York Action is an improper anticipatory suit.  None of the supporting Declarations submitted by Plaintiffs establish any "improper or abusive" motive behind Illinois Union's filing of the New York Action seeking to obtain a declaration regarding its obligations under the Policy, particularly considering the patience with which Illinois Union waited for Plaintiffs to articulate the bases for their coverage challenge.  Plaintiffs' arguments that they believed the parties' negotiations were still ongoing are irrelevant in view of the foregoing circumstances, and that there was ample time for Plaintiffs to elect to file suit; nothing procedurally or otherwise barred Plaintiffs from filing suit under the Policy in the venue of their own choosing; no promises, assurances or guarantees were made by Illinois Union which mislead or misguided Plaintiffs; and at no time did Plaintiffs threaten or even intimate a suggestion of filing suit, at any time.  (Exhibit 2, Stella Decl. at ¶ 8).  Clearly, then, Plaintiffs have no evidence to satisfy their burden of establishing any "improper or abusive" motive or any "manipulative or deceptive behavior" on Illinois Union's part for filing suit in New York, as required under applicable law, and Plaintiffs' argument that the first-filed rule does not apply because the New York Action is an improper anticipatory suit is meritless and must fail.

Additionally, Plaintiffs' argument that "apparent forum-shopping" is evidenced by the fact that "New York has no connection whatsoever to the parties' dispute" [Doc. No. 18, Page 21 of 34] is disingenuous given the contractually agreed forum selection clause providing for New York jurisdiction and the application of New York law to this coverage dispute, as discussed further below.  Indeed, to the contrary, had Illinois Union sued anywhere but New York, forum shopping might validly be claimed.

**B.**    **LaGen's Personal Jurisdiction Defense Is Irrelevant and Immaterial**

Plaintiffs' attempt to inject LaGen's jurisdictional defense to the New York Action into issues before this Honorable Court is nothing more than a thinly veiled attempt to conflate the issues and mislead the Court into believing that an alleged lack of personal jurisdiction over LaGen usurps jurisdiction of the Southern District of New York, none of which has been established and all of which is denied.  [Doc. No. 18, Page 21 of 34].  In the first instance, it is respectfully submitted that the issue of the New York Court's exercise of personal jurisdiction over LaGen is one to be decided by Judge Barbara S. Jones, not by this Court.  The issue is currently pending on Motion before the Southern District of New York, and Illinois Union respectfully submits that this Honorable Court should disregard any alleged jurisdictional defenses until such time as the New York Court properly considers and rules upon the issues, so as to avoid any ruling which would likely impinge upon on the New York Court's authority, and to avoid piecemeal and potentially inconsistent resolution of issues by the courts.

Additionally, the Fifth and Second Circuits recognize that even permissive forum selection clauses constitute consent to the personal jurisdiction of the court to which the clause speaks.  *See*, for example, Caldas & Sons, Inc., 17 F. 3d 123, 128 (5th Cir. 1994), in which the Fifth Circuit held that the parties consented to the personal jurisdiction of Zurich courts by virtue of a permissive forum selection clause which provided that the laws and courts of Zurich were applicable.  *Also See* D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements").  Thus, irrespective of whether the forum selection clause at issue is permissive, LaGen by virtue thereof and its contractual covenants has waived any objection to the Southern District's exercise

of personal jurisdiction over it.  (Exhibit 1, Policy, IX. General Conditions, I. Jurisdiction and Venue;  Exhibit 2 [New York Rec. Doc. 8-7, Page 20 of 25]).

Still further, even assuming hypothetically that LaGen has not waived its personal jurisdiction defense, which is not the case and which Illinois Union at all times denies, Plaintiffs' statements that "LaGen has *no* contacts with New York" appear to be disingenuous, at best. [Doc. No. 18, Page 22 of 34].  LaGen has a number of jurisdictional ties with the Southern District of New York.  LaGen filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of New York, Case No. 03-13047, and was also a party to a separate Southern District of New York Bankruptcy case, Case No. 03-93594.  (See Exhibit 4, Bankruptcy Pleadings attached *in globo*).  Curiously missing from Jeffrey M. Baudier's Declaration is any mention that LaGen availed itself of the jurisdiction of the Southern District of New York, which at a minimum would counter Plaintiffs' position that it had no contacts with New York.  [Doc. No. 18-1].  Also, as previously established, NRG owns multiple covered properties in New York and the parties, including LaGen, conducted activities in New York in connection with this dispute.  (Exhibit 2, Declaration of Christopher R. Stella ("Stella Decl.") at ¶7  [New York Rec. Doc. 8-9, Page 3 of 4]).  For all of the foregoing reasons, LaGen's personal jurisdiction defense is highly questionable and is nevertheless an issue to be decided by the Southern District of New York.

    **C.**    **No Factors Warrant Deviation From the First-Filed Rule**

Finally, Plaintiffs argue that the first-filed rule should be set aside because the balance of convenience factors favor the instant Louisiana Action.  Plaintiffs, however, fail to cite any applicable Fifth Circuit cases on point and, in any event, for all the reasons set forth in its briefing and evidence, Illinois Union respectfully submits that even in the absence of a forum

selection clause, the balance of convenience factors clearly weigh in favor of dismissing this action and/or transferring venue to the Southern District of New York.

## III.    ILLINOIS UNION HAS ESTABLISHED THAT TRANSFER IS WARRANTED PURSUANT TO 28 U.S.C.A. § 1404(a)

### A.    Public and Private Interest Factors Favor New York

Although Plaintiffs go to great lengths attempting to blur the lines between the issues being litigated in the underlying Enforcement Action and those to be litigated in the coverage dispute to support their contention that Louisiana is a more convenient forum, this is simply not the case.  In Extex Production, Inc., v. Mid Continent Cas. Co.,  2008 WL 191650, (M.D.La. 1/22/08), handed down before the Fifth Circuit's Volkswagen decision, 545 F. 3d 304, 315 (5th Cir. 10/10/08), the Louisiana Middle District rejected similar arguments in the context of a coverage dispute.  There, the underlying litigation was pending in the Parish of Orleans and the insured, Extex, filed a declaratory judgment action in the Middle District seeking defense and indemnity from its insurers for the underlying litigation.  Extex subsequently commenced an identical suit in Texas, which was later removed by the insurer to federal court.  In resisting transfer to the Texas venue sought by the insurer defendants, Extex argued that the case would involve fact-intensive issues relating to the underlying litigation and all of the witnesses and documents were located in Louisiana.  The Middle District flatly rejected these arguments, reasoning in relevant part:

> The court is not persuaded by Plaintiff's argument that this coverage dispute will involve fact-intensive issues relating to the alleged occurrences in the Underlying Litigation. **Extex seeks a declaratory judgment on the meaning of an insurance policy. The court's primary mission in such an inquiry is to interpret the language and terms of the policy. It is not to make a determination on the facts surrounding the Underlying Litigation since that task is squarely reserved to state court**. (Emphasis added).

Extex Production,  2008 WL 191650 at *3.  Similarly, the coverage disagreement between Illinois Union and Plaintiffs will turn solely on legal issues concerning the application of an insurance policy to a claim under the Clean Air Act.

Plaintiffs' argument that persons with knowledge concerning the NOVs and documents exchanged between the EPA and LaGen pertaining to the NOVs, are located in Louisiana is utterly irrelevant and beside the point.  [Doc. No. 18, Page 27 of 34].  Whether the NOVs constitute a claim first made prior to the Policy's date of inception is an issue that is unlikely to require any significant discovery, at least of LaGen employees.  While LaGen's conduct and correspondence in response to the NOVs may be relevant in the Enforcement Action, such have no bearing on the issue of when the claim was first made – a determination capable of being made as a matter of law by comparing the NOVs to the Policy language.  Accordingly, Plaintiffs identification of various LaGen employees with knowledge of the NOVs is irrelevant.

Plaintiffs also argue that "[p]otential witnesses who can testify regarding [the report relating to the Big Cajun II site] and other information provided to ILU prior to the issuance of the Pollution Policy include the individuals involved in the preparation of the Big Cajun II report, the preparation of the insurance application, the underwriting for the Pollution Policy, and the negotiations relating to the purchase of the Pollution Policy."  [Doc. No. 18, Page 27 of 34]. However, this is a gross distortion of fact.  The report was not prepared by LaGen, but rather by NRG's environmental consultant, Shaw Environmental, a global company, which prepared not only a report for this Louisiana location, but prepared multiple reports for a majority of the over 50 covered locations throughout the United States.  (See Exhibit 1, Policy, Schedule of Covered Locations Endorsement and Known Conditions Endorsements).  Moreover, the application for the Policy was prepared by Mr. Johnson, a resident of Minneapolis, Minnesota. [Doc. No. 18-2,

Declaration of Mark L. Johnson at ¶ 5]. Although the Shaw Environmental's preparation of the report is irrelevant to the insurance coverage dispute, it is noted that Mark L. Johnson concedes in his Declaration that the operations of Shaw Environmental related to preparation of environmental reports are in Massachusetts and thus, even if Shaw representatives were required to testify, which Illinois Union submits they are not, they would not be from Louisiana.

For the same reason, Plaintiffs' assertion that numerous witnesses with knowledge of information provided to Illinois Union in connection with the Policy underwriting are in Louisiana, is without factual basis. [Doc. No. 18, Page 27 of 34]. As set forth in Illinois Union's original Memorandum, the Policy was negotiated between Illinois Union underwriters (primarily located in Pennsylvania) and NRG (principally located in New Jersey and perhaps Minnesota), and NRG's broker (located in Washington, D.C.). (Exhibit 2 Stella Decl. at ¶ 3). While LaGen may have had some involvement in providing information to Shaw Environmental concerning that single Louisiana location, which in turn was provided to Illinois Union, the preparation of the report will not be a factor in the coverage litigation. To the extent the report would bear any relevance to the coverage issue, which Illinois Union denies, it would be limited to the communications between Illinois and NRG with respect to this report. Because the witnesses to the Policy underwriting are not located in Louisiana, but instead reside in locations geographically closer to New York, there can be no question that New York is the more convenient forum of the two.

Even more specious is Plaintiffs' argument that Louisiana witnesses are necessary to the issue of whether the relief available in the Enforcement Action qualifies for coverage under the Policy. [Doc. No. 18, Pages 27-29 of 34]. Plaintiffs concede, as they must, that whether Illinois Union has a duty to defend will be determined by comparing the Policy to the Complaint filed in

the Enforcement Action.  [Doc. No. 18, Page 28 of 34].  Plaintiffs argue, however, that whether Illinois Union has a duty to indemnify necessarily will involve Louisiana witnesses and documents, which simply is not the case.  The only relief available in the Enforcement Action against which an indemnity obligation is measured, is defined by federal statute (i.e., the Clean Air Act) and corresponding Louisiana codes and statutes and thus is readily ascertainable by simply reading the statutes and their jurisprudential interpretations.  Whether such relief qualifies for coverage under the Policy is a matter of policy construction that can be determined as a matter of law on summary judgment, regardless whether such relief comes as the result of an adjudication or settlement.

Additionally, while Plaintiffs identify various individuals which they incorrectly contend will be witnesses to this matter, their opposition is vague as to why these non-party witnesses would be inconvenienced by litigating this matter in New York as opposed to Louisiana.  For instance, Plaintiffs refer to EPA employees and LDEQ witnesses and the location of EPA documents.  [Doc. No. 18, Page 28 of 34].  However, Plaintiffs do not identify why any third-party witnesses would be relevant in a matter concerning insurance coverage.  Moreover, Plaintiffs should be well-aware, at the very least, that EPA employees cannot be subpoenaed in a private contract dispute.  *See* United States Envtl. Prot. Agency v. General Electric, 197 F.3d 592, 597 (2d Cir. 1999).  And, furthermore, that the EPA's documents are available only by a request pursuant to the Freedom of Information Act.  5 U.S.C. § 552 (2006). Thus, there can be no concerns at all as to the convenience of governmental witnesses and its documents, which will not be acquired through Louisiana litigation.

The only potentially relevant non-party witness will be NRG's broker, who is located in Washington, D.C., which is closer to New York than Louisiana. (Exhibit 2, Stella Decl. at ¶ 3). As Plaintiffs do not identify any proper non-party witnesses who would be inconvenienced by a New York forum, this factor also tips in Illinois Union's favor.

In a final effort to twist the applicable law so as to achieve the result they desire, Plaintiffs go so far as to cite and rely upon cases which consider factors in direct contravention of holdings of the Fifth Circuit Court of Appeals, as discussed below.

### B.    <u>Location of Counsel is Irrelevant</u>

Plaintiffs incorrectly argue that the location of counsel in this matter weighs against transfer of this action, improperly attempting to utilize the retention of local Louisiana counsel to defend this suit against it as a justification for maintaining suit here. [Doc. No. 18, Page 30 of 34]. Plaintiffs make this argument in the face of Fifth Circuit precedent expressly holding that location of counsel "is irrelevant and improper for consideration in determining the question of transfer of venue." <u>In Re Horseshoe Entertainment</u>, 337 F. 3d 429, 434 (5th Cir. 2003); <u>In Re Volkswagen AG</u>, 371 F. 3d 201, 206 (5th Cir. 2004).

Indeed, as the Fifth Circuit explained in <u>Horseshoe Entertainment</u>, "boot strapping" of even a relevant factor, much less an irrelevant factor, should not be encouraged. Plaintiffs know very well and have known throughout the course of their communications and dealings with Illinois Union following its denial of coverage that Illinois Union was and is represented by New York counsel with the Law Firm of Traub Lieberman Straus & Shrewsberry LLP. The fact that Illinois Union was forced by Plaintiffs to engage local Louisiana counsel to defend the instant improperly-filed suit and to seek transfer of this action to the proper venue in the first-filed New York court cannot be used against Illinois Union. Plaintiffs should not be allowed to

manufacture a position by suing Illinois Union, requiring a defense, then using the required

defense of their own retaliatory suit as a reason against transfer.  Accordingly, the location of

counsel is irrelevant and immaterial and not to be considered in the transfer of venue analysis.  It

is likewise completely irrelevant that Illinois Union's New York counsel has not formally

appeared in this suit, as she is actively representing Illinois Union in the New York Action and

has been from the inception of this coverage dispute, and is the attorney which conducted the

coverage evaluation.

### C.    <u>Plaintiffs' Convenience Argument Has Been Waived</u>

Plaintiffs also argue that the convenience of the parties is a factor which does not weigh

in favor of transfer to the Southern District of New York.  Specifically, the Plaintiffs contend that

LaGen's headquarters in New Roads, Louisiana is a factor which weighs in favor of maintaining

the Louisiana action, as it would be more convenient for LaGen to litigate the dispute in

Louisiana than New York.  This argument is meritless because the Plaintiffs have waived their

right to argue that convenience of the parties favors Louisiana over New York through their

consent to the forum selection clause.  *See* <u>Calix-Chacon v. Global Intern. Marine, Inc.</u>, 493 F.3d

507, 515 (5th Cir. 2007) ("A forum selection clause is a contractual waiver of the right to seek

transfer or dismissal based on the parties' own inconvenience.").  Thus, the Policy's forum

selection clause is conclusive on the issue of parties' convenience; this is the law regardless

whether the forum selection clause is mandatory or permissive.  *See, e.g., "*<u>Citicorp Leasing,</u>

<u>Inc. v. United Am. Funding, Inc.</u>, 2004 U.S. Dist. LEXIS 739 (S.D.N.Y. Jan. 21, 2004); <u>Orix</u>

<u>Credit Alliance, Inc. v. Mid-South Materials Corp.</u>, 816 F. [Doc. No. 18, Page 21 of 34].Supp.

230 (S.D.N.Y. 1993).  In any event, allowing the headquarters of each insured to be a factor

would not be workable as this would provide no certainty to the parties and require litigation all

across the Country, which would seemingly thwart the Fifth Circuit's stated goal of allowing contracting parties to achieve uniformity and predictability in the interpretation of their contracts. *See* Grand Isle Shipyard v. Seacor Marine, LLC, 589 F. 3d 778, 801 (5th Cir. 12/08/09).

### D.       Plaintiffs' Choice of Forum In This District Is Not Entitled To Deference

Plaintiffs also incorrectly argue that LaGen is "the natural plaintiff in the parties' coverage dispute, and its choice of forum should be given deference by this Court."  [Doc. No. 18, Page 30 of 34].  First, Plaintiffs improperly look to Texas district court opinions to support their argument that the party infringed should have the privilege of electing where to enforce its rights.  Texas has nothing to do with this coverage dispute and the Texas district court cases cited are not only factually distinguishable, but they do not overcome precedential Fifth Circuit and Second Circuit law which adheres strongly to the first-filed rule.  Second, Illinois Union, not LaGen, is the true Plaintiff in this cause, since it was first to file a declaratory judgment action pursuant to 28 U.S.C. §2201.  (Exhibit 1).  When a claim for insurance has been made, and a legitimate question exists as to the propriety of denying coverage, the insurance company may file a declaratory judgment action.  It is not necessary for an insurance company to wait for the insured to file a lawsuit against it.  *See* 28 U.S.C. §2201; *e.g.,* Clarendon America Insurance Co. v. CM General Contractors, Inc., 2009 WL 136028, *4 (W.D.La. 1/20/2009); Atlanta Casualty Co. v. Fountain, 262 Ga. 16, 17, 413 S.E.2d 450, 451 (1992).

Moreover, to accept Plaintiffs' argument that the insured in a coverage dispute is always the "natural Plaintiff" who elects the choice of forum would effectively deprive insurers of the right to ever be a plaintiff in a coverage dispute and select the choice of forum.  Such would lead to the impermissible result of violating provisions of the parties' insurance contract, such as in this case where the parties agreed to submit to the jurisdiction of New York, and would arguably

violate constitutional prohibitions against the impairment of contractual obligations.  *See* Art. I,

Sec. 10, Clause 1, U.S. Const.; and Art. 1, Sec. 23, La. Const.  While other federal statutes, such

as the Savings to Suitors Clause, 28 U.S.C. § 1333, expressly provide that a particular party has

the right to determine the venue, the Declaratory Judgment Act does not so provide and thus

choice of venue is equally available to all parties there under. *See* 28 U.S.C. §2201.

Additionally, even assuming NRG and LaGen were the "true Plaintiffs" in the context of

this coverage dispute, which Illinois Union at all times adamantly denies, their choice of forum

would not be conclusive or otherwise entitled to the "great weight" as Plaintiffs maintain, since

the Fifth Circuit has held that the Plaintiffs' choice of forum is not afforded any heightened

deference.  *See* In Re Volkswagen of America, Inc., 545 F. 3d 304, 315 (5th Cir. 10/10/08).

Thus, when the movant demonstrates that the transferee venue is more convenient, as Illinois

Union has done in this case based on the totality of circumstances and evidence, the good cause

shown overrides the plaintiff's choice of venue.  Id.  As such, Plaintiffs' entire position in this

regard must fail.

Overall, as established in Illinois Union's Motion and supporting Memorandum, the

balance of convenience analysis does not substantially favor the Louisiana forum, nor justify

departure from the first-filed rule even in the absence of the forum selection clause, and,

accordingly, this action should be dismissed and/or transferred in favor of the pending New York

Action.

### E.  **Public Interest Factors Favor New York, Not Louisiana**

Finally, Plaintiffs erroneously contend that "New York has no interest in this dispute

between out-of-state companies over coverage for a claim arising out of the operations of the Big

Cajun II plant in Louisiana" and, thus, the "local interest" factor favors Louisiana over New

York.  [Doc. No. 18, Page 32 of 34].  Once again, Plaintiffs miss the mark in so narrowly

viewing the effect of the coverage determination at issue.  In particular, Plaintiffs fail to

recognize and acknowledge that the coverage determination to be made regarding the Pollution

Policy at issue in this case will apply to all covered NRG locations across the United States.

This is not a coverage issue implicated by the Big Cajun II Louisiana plant only.  Since

determination of coverage on these issues will govern future coverage afforded to all covered

locations throughout the Country, the majority of which are located in New England, New York

clearly has an interest in having the insurance policy interpreted under its laws and in its forum,

particularly where, as here, the parties contractually agreed before-hand to the New York

jurisdiction.  (*See* Exhibit 1, Schedule of Covered Locations Endorsement containing nearly 20

covered locations in the New England States, including seven in New York, versus only four

Louisiana covered locations).  Accordingly, the "local interest" factor clearly favors New York,

not Louisiana.

## IV.     <u>CONCLUSION</u>

For all of the foregoing reasons, as well as for all of the reasons set forth in Illinois

Union's Rule 12(b)(3) Motions To Dismiss, Transfer or Stay and supporting Memorandum, and

based on the evidence presented, Illinois Union respectfully submits that its Motion To Dismiss

[Doc. No. ] should be granted and Illinois Union should be dismissed with prejudice and at

Plaintiffs' cost and, alternatively, that this cause should be transferred to the United States

District Court for the Southern District of New York pursuant to the first-filed rule and/or 28

U.S.C. § 1404(a), or otherwise stayed pending final disposition by the Southern District of New

York.

Respectfully submitted,

PREIS & ROY
(A Professional Law Corporation)


BY:     /s/ Jennifer E. Michel
        **JENNIFER E. MICHEL. (#18114)**
        **DANIELLE M. SMITH (#24648)**
        **TABITHA R. DURBIN (#29164)**
        102 Versailles Blvd., Suite 400
        Post Office Drawer 94-C
        Lafayette, Louisiana  70509
        Telephone:     337-237-6062
        Facsimile:     337-237-9129
        E-mail:        jem@preisroy.com
                       dms@preisroy.com
                       trd@preisroy.com

        COUNSEL FOR ILLINOIS UNION
        INSURANCE COMPANY

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 1, 2010, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send a notice of filing to all counsel

accepting electronic notice.  I further certify that I mailed the foregoing document and notice of

electronic filing filed by first-class mail to all counsel of record who are non-CM/ECF

participants.

 /s/ Jennifer E. Michel                                   
**JENNIFER E. MICHEL**

/1607953

27