UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

LOUISIANA GENERATING LLC, and )
NRG ENERGY, INC. )
                              )
        Plaintiffs, )
                              )
        v. )    No. 3:10-cv-00516-RET-SCR
                              )
ILLINOIS UNION INSURANCE COMPANY, )
                              )
        Defendant. )
                              )

## PLAINTIFFS' SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, TRANSFER OR STAY THIS ACTION

William Jarman
Linda Akchin
KEAN MILLER HAWTHORNE D'ARMOND
MCCOWAN & JARMAN, LLP
One American Place
301 Main Street, Suite 1800
Baton Rouge, Louisiana 70801
Tel: (225) 387-0999
Fax: (223) 388-9133

Of Counsel:

John E. Heintz (admitted *pro hac vice*)
Marla H. Kanemitsu (admitted *pro hac vice*)
Shavon J. Smith (admitted *pro hac vice*)
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, D.C. 20006-5403
Tel: (202) 420-2200
Fax: (202) 420-2201

*Counsel for Plaintiffs Louisiana Generating LLC
and NRG Energy, Inc.*

Plaintiffs LaGen and NRG[1] respectfully submit this sur-reply in further opposition to Defendant's motion to dismiss, transfer or stay this action.

## I. THE JURISDICTION CLAUSE DOES NOT SUPPORT LITIGATION OF THE PARTIES' DISPUTE IN ILU'S NEW YORK ACTION

ILU's Motion is premised, in large part, on the Jurisdiction Clause in the Pollution Policy. That clause states that the parties agree to "submit to the jurisdiction of the State of New York." Pl's Compl. Ex. C at "10 of 10." ILU misconstrues this Jurisdiction Clause as requiring the parties to litigate all disputes relating to the Pollution Policy in New York, and asks this Court to dismiss, transfer, or stay this action so that the parties' dispute can be resolved in ILU's favored New York forum. As Plaintiffs explained in their Opposition Brief, ILU misinterprets the Jurisdiction Clause in two fundamental ways: (1) it wrongly interprets the Jurisdiction Clause as a mandatory forum clause (i.e., a clause that requires all disputes be litigated *only* in the designated forum) when in fact the clause is a permissive forum clause (i.e., the clause designates only one permissible forum, not the only forum); and (2) it wrongly interprets the Jurisdiction Clause as encompassing federal courts in New York, when the plain language of the Clause limits consent to the state courts of New York. *See* Pl's Opp. Br. at 6-9, 10-12.

In its Reply, ILU does not dispute that the Jurisdiction Clause is permissive rather than mandatory. However, ILU attempts to save its motion by clinging to its position that the Clause includes federal courts in addition to state courts in New York. *See* ILU Reply Br. at 4-7. According to ILU, the Jurisdiction Clause's reference to "the State of New York" refers to "geography" rather than "sovereignty," and it therefore includes both federal and state courts in New York. *See* ILU Reply Br. at 5-7. ILU is correct that courts draw a distinction between

---

[1] Defined terms used herein have the same meaning as in Plaintiffs' September 20, 2010 Memorandum of Law ("Plaintiffs' Opposition Brief").

DSMDB-2848948v1

forum selection clauses expressed in terms of "sovereignty" (where the forum clause only includes courts of the state sovereign) and those expressed in terms of "geography" (where the clause permits suit in state or federal courts located in the specified geographic boundary). *See Silo Point II LLC v. Suffolk Constr. Co., Inc.*, 578  F. Supp. 2d 807, 810 (D. Md. 2008); *City of New York v. Pullman Inc.*, 477 F. Supp. 438, 442 (S.D.N.Y. 1979).  However, ILU's contention that the Jurisdiction Clause is "geographic" is flatly wrong.  Courts consistently have interpreted clauses like the Jurisdiction Clause as specifying sovereignty, not geography.

For example, in *Silo Point II LLC v. Suffolk Construction Co., Inc.*, the court held that a clause requiring that suit be brought in "the courts of the State of Maryland" designated sovereignty.  578 F. Supp. 2d at 810.  As the court explained:

> The forum selection clause in this case is unambiguously expressed in terms of sovereignty and therefore excludes federal courts.  The term "of" is commonly used in clauses to refer to sovereignty and has been defined as "denoting that from which anything proceeds; indicating origin, source, descent." . . .  It follows that this Court is not a "court[ ] of the State of Maryland," but rather a court of the United States that is located in Maryland.  *See Dixon [v. TSE Int'l Inc.,* 330 F.3d 396, 398 (5th Cir. 2003)]* ("Federal district courts may be *in* Texas, but they are not *of* Texas.") (emphasis in original).  This Court is further persuaded by the fact that the weight of authority construing phrases similar or identical to "courts of the State of . . ." has reached the same conclusion.  *See, e.g., Pee Dee Health Care v. Sanford,* 509 F.3d 204, 208 n.6 (4th Cir.2007) (noting that a forum selection clause requiring suit be brought in "the courts of the State of South Carolina" "reflect[ed] an agreement to pursue administrative appeals in a state tribunal"); *Am. Soda[, LLP v. U.S. Filer Wastewater Group, Inc.,* 428 F.3d 921, 925 (10th Cir. 2005)]* (holding that a forum selection clause requiring the parties to submit to the jurisdiction "of the Courts of the State of Colorado" excluded federal court); *Dixon,* 330 F.3d at 398 (holding that "[t]he Courts of Texas, U.S.A." limited suit to state court); *Setzer v. Natixis Real Estate Capital, Inc.,* 537 F. Supp. 2d 876, 879 (E.D. Ky.2008) (construing "in the courts of the State of New York" as foreclosing federal court jurisdiction).

> A very different result would be required if the forum selection clause in the Contract had used terms such as "in" or "within" instead of the term "of." *See Pullman Inc.,* 477 F. Supp. at 442 (distinguishing between clauses referring to sovereignty (i.e., "courts of the state of") and clauses referring to geography (i.e., "courts located in the state of")).

DSMDB-2848948v1

*Id.* at 810-11 (certain citations omitted).    Numerous other courts have reached the same conclusion, holding that "of" denotes sovereignty while "in" denotes geography.[2]   Under these precedents, the Jurisdiction Clause's reference to the "jurisdiction *of* the State of New York" is one of sovereignty, and therefore provides consent only to litigation in New York state courts.

To avoid the effect of the Jurisdiction Clause's unambiguous language, ILU claims that the Clause's reference to "the jurisdiction of the State of New York" is more analogous to clauses specifying a forum "*in* the State of . . ." than those specifying a forum "*of* the State of . . ."   *See* ILU Reply Br. 5-6 (citing cases addressing clauses using "in" rather than "of," including *Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 74 (2d Cir. 2009) (venue "shall be in Nassau County, New York"); *Universal Commodity*, 2009 WL 1850986 at *4 (suits shall "be brought in New York State"); *Cronin*, 105 F. Supp. 2d at 138 (suits shall be brought in "the courts located in the City and State of New York")).[3]   ILU's position should be rejected.   As noted above, courts interpret "in" and "of" very differently, and the Jurisdiction Clause uses the latter.

---

[2] *See, e.g., Dixon*, 330 F.3d at 397-398 (5th Cir. 2003) (clause specifying suit in "The Courts of Texas, U.S.A." mandated litigation in Texas state courts, because "of" denotes "belonging or a possessive relationship," and "[f]ederal district courts may be *in* Texas, but they are not *of* Texas"); *Unistaff, Inc. v. Koosharem Corp.*, 667 F. Supp. 2d 616, 621 (E.D. Va. 2009) ("venue choice tethered to geography would be identified by use of the preposition 'in' as opposed to 'of'"); *Rogen v. Memry Corp.*, 886 F. Supp. 393 (S.D.N.Y. 1995) ("[t]he use of the word 'of' and the phrase 'State of'" in the clause "the legal tribunals of the State of New York" "is sufficiently specific and unambiguous to require that actions regarding the Agreement be litigated in New York State court"); *Phoenix Global Ventures, LLC v. Phoenix Hotel Ass'n, Ltd.*, No. 04-civ-4991, 2004 U.S. Dist. LEXIS 20977, *21 (S.D.N.Y. Oct. 19, 2004) (clause designating forum as "the courts of the State of New York" "clearly establish[ed] exclusive jurisdiction in New York state courts"); *Cronin v. Family Educ. Co.*, 105 F. Supp. 2d 136, 138 (E.D.N.Y. 2000) ("the courts located in the City and State of New York" is geographic forum clause); *Universal Commodity Servs., Inc. v. Murphy Road Recycling, LLC*, No. 09-CV-970, 2009 U.S. Dist. LEXIS 60150, *4 (E.D.N.Y. June 18, 2009) ("shall be brought in New York State" is geographic forum clause).

[3] The only case relied upon by ILU that uses the term "of" is *Reliance Insurance Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49 (S.D.N.Y. 2001).  However, *Six Star* did not address whether the forum

DSMDB-2848948v1

In addition, the fact that the Jurisdiction Clause refers to the "*jurisdiction* of the State of New York" rather than the "*courts* of the State of New York" is a distinction without a difference. *See* ILU Reply Br. at 4-5.   The decisions holding that the phrase "the courts of the State of New York" refers to sovereignty do not base that conclusion on the use of the term "courts" in the clause, but rather on the use of the term "of." *See, e.g., Dixon*, 330 F.3d at 397-98; *Am. Soda*, 428 F.3d at 926; *Silo Point II*, 578 F. Supp. 2d at 811; *Unistaff*, 667 F. Supp. 2d at 621. As the Fifth Circuit explained, the term "of" denotes "that from which anything proceeds; indicating origin, source, descent." *Dixon*, 330 F.3d at 398. The "origin" and "source" of the federal courts' jurisdiction is not the state in which it sits, it is the United States Constitution. *See* 1-1 Moore's Manual: Fed. Prac. & Proc. § 1.03 (2010) ("federal Constitution is the underlying basis for the judicial power of all federal courts"); *Dixon*, 330 F.3d at 397-98. Accordingly, just as "the courts of the State of . . ." refers only to state courts, "the jurisdiction of the State of . . ." refers only to state jurisdiction.[4]

## II.    PURSUANT TO ENDORSEMENT 13, ILU WAIVED ANY RIGHT IT HAD TO SEEK DISMISSAL BASED ON IMPROPER VENUE

ILU's motion seeks dismissal of this action on the basis of improper venue.   ILU's motion to dismiss is predicated on its contention that the Jurisdiction Clause requires the parties to litigate their disputes in New York.  *See* ILU Memo. in Support of Its Motion to Dismiss,

---

clause at issue was one of geography or sovereignty, and it does not appear the parties even raised the issue before the court.

[4] *City of New York v. Pullman* does not impose a special rule of interpretation requiring that forum clauses expressly exclude federal courts in order to limit jurisdiction to state courts. *Cf.* ILU Reply Br. at 5. In *Pullman*, the court applied the "normal rules of construction," determined that the clause at issue was ambiguous, and interpreted it against the drafter. 447 F. Supp. 438, 442 (S.D.N.Y. 1979). As Plaintiffs noted in their Opposition Brief, if this Court determines that the Jurisdiction Clause can be interpreted as including federal and state courts, the clause is ambiguous and must be interpreted against the drafter, ILU. *See Imperial Enters., Inc. v. Fireman's Fund Ins. Co.*, 535 F.2d 287, 290 (5th Cir. 1976).

DSMDB-2848948v1

Transfer or Stay at 4-6. As explained in Plaintiffs' Opposition Brief and above, the Jurisdiction Clause does no such thing, because it is permissive, not mandatory, and because it does not apply to federal courts. *See* Pl's Opp. Br. at 6-9, 10-12. ILU's motion to dismiss this action for improper venue should be denied on that basis alone. However, it also should be denied because ILU waived any objection based on improper venue pursuant to Endorsement 13 to the Pollution Policy. That endorsement states that, upon the policyholder's request, ILU "will submit to the jurisdiction of any court of competent jurisdiction." Pl's Compl. Ex. C at Endorsement 13. In its Reply Brief, ILU asserts (1) that Endorsement 13 only evidences ILU's "agreement to submit to personal jurisdiction," and (2) that Endorsement 13 is irrelevant based on the Fifth Circuit's decision in *International Insurance Co. v. McDermott Inc.*, 956 F.2d 93 (5th Cir. 1991). *See* ILU Reply Br. at 2-4.

First, ILU's contention that Endorsement 13 relates only to personal jurisdiction is contradicted by *City of Rose City v. Nutmeg Insurance Co.*, 931 F.2d 13 (5th Cir. 1991). In that case, the policyholder filed suit in state court and the insurer sought to remove the action to federal court. *See id.* at 14. Relying on a service of suit clause like Endorsement 13, the Fifth Circuit held that the insurer had waived its right of removal, and had consented to litigate the dispute in the insured's chosen forum. *See id.* at 14-15. If the service of suit clause related only to personal jurisdiction, as ILU contends, it would not have prohibited removal. The Fifth Circuit's holding that removal was barred by the service of suit clause fatally undermines ILU's position here.

Second, although ILU spends a great deal of time discussing *International Insurance Co. v. McDermott, Inc.*, its reliance is misplaced. *McDermott* involved a coverage dispute between an insurer and a policyholder. The insurer filed suit in federal court, and the policyholder filed a

DSMDB-2848948v1

subsequent action in state court. 956 F.2d at 94-95. The policyholder filed a motion to dismiss the first-filed federal suit, arguing that the insurer's first-filed suit should be dismissed because the service of suit provision gave the policyholder the exclusive right to choose the forum for litigating all disputes. *Id.* at 95. The *McDermott* court rejected the policyholder's position, holding that the service of suit clause did not bar an insurer from filing a declaratory judgment action in a forum of its choosing, although the court recognized that there may be other grounds for dismissing a competing insurer suit.[5] *See id.* Thus, the issue before the *McDermott* court was what effect the service of suit clause has on a first-filed action by an insurer, and the answer, according to *McDermott*, is that the service of suit provision does not provide a basis for dismissing a first-filed suit by an insurer. *See id.*

That, however, is not what is at issue here – here, the issue is not what effect the service of suit clause has on a first-filed suit filed by an insurer, but what effect the service of suit clause has on a subsequent suit filed by the policyholder. *McDermott* also addressed that issue, and stated that the service of suit provision means what it says and requires the insurer to submit to the jurisdiction of the court chosen by the policyholder for its second-filed suit. *See id.* at 96 n.1 ("Thus, as [the insurers] concede, they must appear in the Texas court in which [the policyholder] has filed its action, and must submit to the jurisdiction of that court. The Service of Suit clause requires as much."). In short, the court "construed the Service of Suit clause to allow the insured to choose which forum will hear *its* action and to allow the insurer to choose which forum will hear *its* action . . . ." *Id.* at 96 (emphasis in original); *see also Campo Music*

---

[5] In the New York Action, LaGen and NRG filed a motion seeking to dismiss that action, or to transfer it to this Court. *See* Declaration of M. Kanemitsu (attached hereto) at Ex. 1. In their motion, LaGen and NRG seek dismissal on the grounds that (1) the balance of convenience favors this Court, (2) the Southern District of New York lacks personal jurisdiction over LaGen, and (3) venue is improper in the Southern District of New York. *See id.*

DSMDB-2848948v1

*Shopping Center Condo. Ass'n v. Evanston Ins. Co.*, No. 07-5449, 2007 WL 3252494, *1 (E.D. La. Nov. 1, 2007) ("[I]n [*McDermott*] . . . the court of appeals found that the insurer's filing of an action for declaratory relief in federal court did not trump the insured's right to bring a subsequent action in state court."). NRG and LaGen selected this forum to hear its action against ILU, and, pursuant to Endorsement 13, ILU waived any right it had to seek dismissal of this action based on improper venue.

## CONCLUSION

For the reasons set forth above and in Plaintiffs' Opposition Brief, Plaintiffs request that Defendant's motion be denied.


Dated:  October 8, 2010                    Respectfully submitted,


By:  *Linda S. Akchin*
     _____
     William Jarman
     Linda Akchin
     KEAN MILLER HAWTHORNE D'ARMOND
     MCCOWAN & JARMAN, LLP
     One American Place
     301 Main Street, Suite 1800
     Baton Rouge, Louisiana, 70801
     Tel:  (225) 387-0999
     Fax:  (223) 388-9133

     Of Counsel:

     John E. Heintz (admitted *pro hac vice*)
     Marla H. Kanemitsu (admitted *pro hac vice*)
     Shavon J. Smith  (admitted *pro hac vice*)
     DICKSTEIN SHAPIRO LLP
     1825 Eye Street, N.W.
     Washington, DC  20006-5403
     Tel:  (202) 420-2200
     Fax:  (202) 420-2201

     *Counsel for Louisiana Generating LLC and*
     *NRG Energy, Inc.*

8

DSMDB-2848948v1

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of Plaintiff's Sur-Reply in Opposition to Defendant's Motion to Dismiss, Transfer or Stay this Action was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

Baton Rouge, Louisiana, this 8th day of October, 2010.

_Linda S. Akchin_
Linda S. Akchin

DSMDB-2848948v1

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

|  |  |
|---|---|
| LOUISIANA GENERATING LLC, and NRG ENERGY, INC., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| ILLINOIS UNION INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) ) ) |

No. 3:10-cv-00516-RET-SCR

Judge:  Ralph E. Tyson

## <u>DECLARATION OF MARLA H. KANEMITSU</u>

DISTRICT OF COLUMBIA, ss:

Marla H. Kanemitsu, being sworn, states:

1.     I am a partner at the law firm Dickstein Shapiro LLP in Washington, D.C.

2.     I represent Louisiana Generating LLC ("LaGen") and NRG Energy, Inc. ("NRG") in connection with their dispute with Illinois Union Insurance Company ("ILU") over insurance coverage for the action styled *United States v. Louisiana Generating LLP*, No. 09-100 (M.D. La.).

3.     Attached hereto as Exhibit 1 is a true and correct copy of Defendants' Notice of Cross-Motion to Dismiss or Transfer and accompanying Memorandum of Law in Support of Defendants' Opposition to Plaintiff's Motion for An Injunction and In Support of Defendants' Cross-Motion to Dismiss or Transfer, which were filed by LaGen and NRG on September 7, 2010 in the action styled *Illinois Union Insurance Company v. NRG Energy, Inc. and Louisiana Generating, LLC*, No. 10-cv-5743 (S.D.N.Y.).

I have read the foregoing paragraphs and state them to be true based on my own personal knowledge.

_____

Marla H. Kanemitsu

Subscribed and sworn to before me this 8th day of October, 2010.

_Caroline E. Frazier_

Notary Public, District of Columbia
My Commission Expires

**Caroline E. Frazier**
**Notary Public, District of Columbia**
**My Commission Expires 06-30-2014**

2

# UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ILLINOIS UNION INSURANCE COMPANY, )<br><br>Plaintiff, )<br><br>v. )<br><br>NRG ENERGY, INC., and LOUISIANA GENERATING LLC, )<br><br>Defendants. ) | No. 10 CV 5743 (BSJ) |

## DEFENDANTS' NOTICE OF CROSS-MOTION TO DISMISS OR TRANSFER

PLEASE TAKE NOTICE that, upon the accompanying Memorandum of Law in Support of Defendants' Cross-Motion to Dismiss or Transfer, and the Declarations of Mark L. Johnson, dated September 2, 2010, and Jeffrey M. Baudier, dated September 2, 2010, and the exhibits thereto, Defendants NRG Energy, Inc. and Louisiana Generating, LLC will move this Court, before the Honorable Barbara S. Jones, United States District Judge for the Southern District of New York, for an Order dismissing this action pursuant to 28 U.S.C. § 2201, which grants this Court discretion to decline jurisdiction of actions for declaratory relief, and pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and improper venue, or, in the alternative, transferring this action to the United States District Court for the Middle District of Louisiana.



DSMDB-2835595v1

Dated:  September 7, 2010                    Respectfully submitted,


                                             Jeremy M. King
                                             DICKSTEIN SHAPIRO LLP
                                             1633 Broadway
                                             New York, New York 10019-6708
                                             Tel:  (212) 277-6500
                                             Fax:  (212) 277-6501

                                             Of Counsel:
                                             John E. Heintz (*pro hac vice* application pending)
                                             Marla Kanemitsu (*pro hac vice* application pending)
                                             Shavon J. Smith (*pro hac vice* application pending)
                                             DICKSTEIN SHAPIRO LLP
                                             1825 Eye Street, NW
                                             Washington, D.C. 20006-5403
                                             Tel:  (202) 420-2200
                                             Fax:  (202) 420-2201

                                             *Counsel for Defendants NRG Energy Inc. and
                                             Louisiana Generating LLC*

                                    2

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ILLINOIS UNION INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> NRG ENERGY, INC., and LOUISIANA GENERATING LLC, <br><br> Defendants. | No. 10 CV 5743(BSJ) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AN INJUNCTION AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION TO DISMISS OR TRANSFER

Jeremy M. King (JK 6835)
DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019-6708
Tel: (212) 277-6500
Fax: (212) 277-6501

Of Counsel:

John E. Heintz (*pro hac vice* application pending)
Marla Kanemitsu (*pro hac vice* application pending)
Shavon Smith (*pro hac vice* application pending)
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, D.C. 20006-5403
Tel: (202) 420-2200
Fax: (202) 420-2201

*Counsel for Defendants NRG Energy, Inc. and Louisiana Generating LLC*

# TABLE OF CONTENTS

<u>Page:</u>

TABLE OF AUTHORITIES ....................................................................................... iii

INTRODUCTION .................................................................................................... 1

STATEMENT OF FACTS ........................................................................................ 2

I.   THE PARTIES AND INSURANCE POLICY AT ISSUE ................................. 2

II.  THE UNDERLYING LOUISIANA ACTION ................................................. 3

III. THE COVERAGE DISPUTE ........................................................................ 4

ARGUMENT .......................................................................................................... 6

I.   THE "FIRST-FILED" DOCTRINE DOES NOT GOVERN THIS CASE ......... 6

II.  PLAINTIFF'S MOTION SHOULD BE DENIED, AND THIS ACTION
     DISMISSED OR TRANSFERRED, BECAUSE THE BALANCE OF
     CONVENIENCE FAVORS THE MIDDLE DISTRICT OF LOUISIANA .......... 8

     A.   Judicial Economy And The Interests Of Justice Strongly Favor The
          Louisiana Court ................................................................................ 9

     B.   Locus Of Operative Facts Favors The Louisiana Court ...................... 11

     C.   Convenience Of Witnesses And Documents, And Availability Of
          Process To Compel Attendance Of Witnesses, Favors The
          Louisiana Court ................................................................................ 12

          1.   ILU's Coverage Defense That The Underlying Louisiana
               Claim Was Not First Made And Reported During The Policy
               Period ...................................................................................... 13

          2.   ILU's Coverage Defense Based On Its Claim That The EPA
               And LDEQ Are Not Authorized To Obtain The "Mitigation"
               Relief They Seek In The Underlying Louisiana Action ................. 14

     D.   The Convenience Of The Parties Favors The Louisiana Forum ............ 16

     E.   Forum's Familiarity With Governing Law ......................................... 16

     F.   ILU's Choice Of Forum Is Entitled To No Deference ........................ 17

III. THE JURISDICTION CLAUSE IN THE POLLUTION POLICY DOES
     NOT REQUIRE LITIGATION OF THE PARTIES' DISPUTE IN THIS
     COURT ...................................................................................................... 17

A.      The Jurisdiction Clause Is Permissive, Not Mandatory........................................ 18

B.      The Forum Clause Does Not Apply To This Court................................................ 19

IV.     THE CLAIMS AGAINST LaGEN SHOULD BE DISMISSED FOR
        LACK OF PERSONAL JURISDICTION..................................................................... 21

V.      THIS ACTION SHOULD BE DISMISSED FOR IMPROPER VENUE........................ 23

CONCLUSION................................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*Adam v. Jacobs*, 950 F.2d 89 (2d Cir. 1991) .......................................................... 17

*AIG Financial Products Corp. v. Public Utility Disrict No. 1 of Snohomish County,*
  *Washington*, 675 F. Supp. 2d 354 (S.D.N.Y. 2009) ........................................... 9

*AVC Nederland B.V. v. Atrium Investment Partnership*, 740 F.2d 148 (2d Cir. 1984)............... 19

*Bank of America, N.A. v. Hensley Properties., LP*, 495 F. Supp. 2d 435 (S.D.N.Y.
  2007).............................................................................................................10

*C.B.C. Wood Products, Inc. v. LMD Integrated Logistics Services, Inc.,*
  455 F. Supp. 2d 218 (E.D.N.Y. 2006) .............................................................. 23

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000).......................... 22

*Duane Reade, Inc. v. St. Paul Fire & Marine Insurance Co.*, 411 F.3d 384
  (2d Cir. 2005).................................................................................................. 21

*Dornoch Ltd. v. PBM Holdings, Inc.*, 666 F. Supp. 2d 366 (S.D.N.Y. 2009) ..................... 7, 8, 20

*Everest Capital Ltd. v. Everest Funds Management, LLC*, 178 F. Supp. 2d (S.D.N.Y.
  2002)...............................................................................................................7

*Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir. 1978) ....................................... 8

*Fireman's Fund Insurance Co. v. Personal Communications Devices, LLC,*
  No. 09-cv-1349, 2009 WL 1973534 (S.D.N.Y. 2009) ........................................ 11

*Herbert Ltd. Partnership v. Electronic Arts Inc.*, 325 F. Supp. 2d 282
  (S.D.N.Y. 2004) .............................................................................................. 17

*Israel v. Chabra*, 537 F.3d 86 (2d Cir. 2008) ................................................................ 20

*Jewelamerica v. Frontstep Solutions Group, Inc.*, 2002 WL 1349754
  (S.D.N.Y. 2002) ................................................................................................. 8

*John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distributors Inc.,*
  22 F.3d 51 (2d Cir. 1994)................................................................................. 18

*JP Morgan Chase Bank, N.A. v. Coleman Toll Ltd. Partnership,*
  2009 WL 1457158 (S.D.N.Y. 2009).............................................................20-21

*LaSalle Bank National Association v. Nomura Asset Capital Corp.*,
    424 F.3d 195 (2d Cir. 2005)..................................................................... 20

*Meyers v. Allstate Insurance Co.*, 2009 WL 804672 (S.D.N.Y. 2009) ......................................... 11

*Mossy Motors, Inc. v. Cameras America*, 898 So.2d 602 (La. App. Mar. 2, 2005) ................... 12

*National Equipment Rental, Ltd. v. Fowler*, 287 F.2d 43 (2d Cir. 1961) ....................... 7

*National Patent Development Corp. v. American Hospital Supply Corp.*,
    616 F. Supp. 114 (S.D.N.Y. 1984) ...................................................... 8

*NewMarkets Partners LLC v. Oppenheim*, 638 F. Supp. 2d 394
    (S.D.N.Y. 2009) .................................................................. 21,22

*Orix Credit Alliance, Inc. v. Mid-South Materials Corp.*, 816 F.Supp. 230
    (S.D.N.Y. 1993) .................................................................. 18-19

*Peavey Co. v. M/V ANPA*, 971 F.3d 1168, 1172 (5th Cir. 1992)....................................10

*POSVEN, C.A. v. Liberty Mutual Insurance Co.*, 303 F. Supp. 2d 391
    (S.D.N.Y. 2004) .................................................................. 17

*Raytheon Co. v. Naional Union Fire Insurance Co. of Pittsburgh, PA*,
    306 F. Supp. 2d 346 (S.D.N.Y. 2004)...................................................... 8

*Recoton Corp. v. Allsop, Inc.*, 999 F. Supp. 574 (S.D.N.Y. 1998) ................................ 8

*Reliance Insurance Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49 (S.D.N.Y. 2001) ......................... 19

*Richmond Farms Dairy, LLC v. National Grange Mutual Insurance Co.*,
    60 A.D. 3d 1411 (N.Y. App. Div. 2009) .................................................. 15

*Royal & Sunalliance v. British Airways*, 167 F. Supp. 2d 573 (S.D.N.Y. 2001) ....................... 12

*Sarin v. CNA Financial Corp.*, 2008 WL 4302951 (N.Y. Sup. Ct. Sept. 12, 2008)..................... 12

*Stellar Mechanical Services of New York, Inc. v. Merchants Insurance
    of New Hampshire*, 74 A.D.3d 948 (N.Y. App. Div. 2010) ...................................... 15

*Tabor v. Anco Insulations, Inc.*, 999 So.2d 258 (La. App. Dec. 10, 2008) ................................ 12

*Welsbach Electric Corp. v. MasTech North America, Inc.*, 859 N.E.2d 498
    (N.Y. 2006) ...................................................................... 16

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)..................................................9

*Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000) ................................................. 22

*Wyndham Associates v. Bintliff, A.G.,* 398 F.2d 614 (2d. Cir. 1968)................................................................................................................................10

*Zurich-American Insurance Co. v. Atlantic Mutual Insurance Co.*, 139 A.D.2d 379 (N.Y. App. Div. 1988) ................................................................................. 12

**Statutes**

28 U.S.C § 1391, *et seq.*............................................................................................23-24

28 U.S.C. § 1404, *et seq.*.........................................................................................2, 9, 10

28 U.S.C. § 2201...............................................................................................................9

N.Y. C.P.L.R. § 301.........................................................................................................22

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(2) ........................................................................2

Federal Rule of Civil Procedure 12(b)(3) ...................................................................2, 23

Defendants NRG Energy, Inc. ("NRG") and Louisiana Generating LLC ("LaGen"), by their attorneys, respectfully submit this Memorandum of Law in opposition to Plaintiff Illinois Union Insurance Company's ("ILU") motion for an order enjoining Defendants from litigating a separate action brought by Defendants in the United States District Court for the Middle District of Louisiana ("Injunction Motion"), and in support of Defendants' cross-motion to dismiss or transfer this action to the United States District Court for the Middle District of Louisiana ("Cross-Motion").

## INTRODUCTION

The principal issue presented by ILU's Injunction Motion and LaGen's Cross-Motion is whether this Court or the United States District Court for the Middle District of Louisiana is the appropriate forum to resolve the parties' insurance coverage dispute. Simply put, this dispute belongs in Louisiana. LaGen, the policyholder seeking insurance coverage, is headquartered in Louisiana, the potential liability arises out of LaGen's operations in Louisiana, the underlying action for which LaGen seeks coverage is pending in Louisiana, Defendants' Louisiana coverage action is pending before the same court and same judge as the underlying action, many of the witnesses and documents are in Louisiana, and the coverage dispute involves issues that will necessarily be addressed in the underlying action pending in Louisiana.

Ignoring the obvious ties between the parties' dispute and Louisiana, ILU asks this Court to focus instead on which action was filed first, to the exclusion of all other relevant factors courts consider in resolving such forum disputes. The reason for this is apparent – this action has no connection whatsoever to New York, and therefore the only leg ILU has to stand on in support of its preferred forum is the fact that the New York action was filed eleven days before the Louisiana action.

As discussed below, ILU's reliance on the New York action's first-filed status is misplaced. While first-filed actions are often given priority over later-filed actions involving the same parties and issues, this factor is of little, if any, importance where, as here, the two actions were filed only a few days apart and the later-filed action was served first. Further, it is well-settled that when the balance of convenience and interests of justice favor a later-filed action, the later-filed action will be given priority. That is the case here.

Given the strong nexus between the parties' dispute and Louisiana, and the lack of any meaningful nexus to New York, this Court should deny ILU's Injunction Motion and exercise its discretion to dismiss ILU's declaratory judgment complaint, or, in the alternative, transfer this action to the Middle District of Louisiana under 28 U.S.C. § 1404. In addition, the claims against LaGen also should be dismissed under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, and the entire action should be dismissed under Rule 12(b)(3) for improper venue.

## STATEMENT OF FACTS

### I.   THE PARTIES AND INSURANCE POLICY AT ISSUE

Plaintiff ILU, an Illinois company with its principal place of business in Illinois, sold the liability policy at issue to NRG. *See* Pl's Compl. ¶ 9; Declaration of Mark L. Johnson at ¶ 3 ("Johnson Decl."). The policy insures both NRG and LaGen. *See id.* ¶ 9. NRG is a Delaware corporation with its principal place of business in Princeton, New Jersey. *See* Declaration of Jeffrey M. Baudier at ¶ 3 ("Baudier Decl."). Although ILU correctly states in its Memorandum of Law that LaGen is incorporated in Delaware, in an apparent effort to downplay this dispute's Louisiana contacts, ILU falsely states that LaGen's principal place of business is in New Jersey. *See* Pl's Mem. of Law at 2. Contrary to ILU's assertion, and as ILU knew full well

at least as of the time it received ILU's Louisiana complaint, LaGen's principal place of business is in New Roads, Louisiana.[1] *See* Baudier Decl. ¶ 3.

The policy at issue is a Premises Pollution Liability II Insurance Policy (the "Pollution Policy") with a policy period of January 22, 2009 to January 22, 2019 for "Pre-Existing Pollution Conditions." *See* Pl's Compl. Ex. A; Johnson Decl. ¶ 3. NRG purchased the Pollution Policy to ensure that it and its subsidiaries would have pollution liability insurance protection for third-party environmental liabilities. *See id.* ¶ 9. Among the locations specifically identified as "Covered Locations" under the Pollution Policy is the "Big Cajun II Generating Station" in New Roads, Louisiana. *See* Pl's Compl. Ex. A at Endorsement 1.

## II.   THE UNDERLYING LOUISIANA ACTION

The instant insurance dispute arises out of LaGen's operations at the Big Cajun II power plant, a coal-fired electric power generating plant in New Roads, Louisiana ("Big Cajun II"). *See* Baudier Decl. ¶ 6; Complaint, *Louisiana Generating LLC, et al. v. Illinois Union Ins. Co.*, No. 3:10-CV-00516 (M.D. La.) ("Louisiana Complaint") (attached as Exhibit 2 to the Declaration of Brian Margolies, which is attached to Pl's Mem. of Law). LaGen is the owner of Big Cajun II Units 1 and 2, which are the subject units of the underlying litigation. *See* Baudier Decl. ¶ 6. Via letters dated February 15, 2005 and December 8, 2006, the United States Environmental Protection Agency ("EPA") sent LaGen "Notices of Violation" ("NOVs") alleging certain violations of the Clean Air Act, 42 U.S.C. § 7401, *et seq.*, and corresponding

---

[1] LaGen's complaint against ILU filed in the Middle District of Louisiana on August 9, 2010, states that LaGen's headquarters are located in New Roads, Louisiana. *See* Louisiana Compl. ¶ 3. The February 11, 2009 complaint filed by the United States Environmental Protection Agency against LaGen also states that LaGen "has its headquarters and principal place of business in [the Middle District of Louisiana]." *See* Pl's Compl. Ex. B at ¶ 5. Although ILU had both complaints at the time it filed its Injunction Motion, ILU falsely stated, without any apparent basis, that LaGen has its principal place of business in New Jersey. *See* Pl's Mem. of Law at 2; Margolies Declaration at Ex. 3 at ¶ 3 (C. Stella Declaration).

provisions of the Louisiana State Implementation Plan ("Louisiana SIP"), at the Big Cajun II plant. *See* Baudier Decl. *at* ¶ 7 Exs. 1, 2.

On February 11, 2009, the EPA filed a complaint in the United States District Court for the Middle District of Louisiana against LaGen styled *United States v. Louisiana Generating, LLC*, No. 09-100 (M.D. La.) (the "Underlying Louisiana Action"). *See* Baudier Decl. ¶ 8. The EPA's complaint does not name NRG as a defendant. *See* Pl.'s Compl. Ex. B at 1. The EPA's complaint alleges that LaGen violated the Clean Air Act and Louisiana SIP in its operation of the Big Cajun II plant. *See id.* On February 8, 2010, the Louisiana Department of Environmental Quality ("LDEQ") moved to intervene in the suit for purposes of filing a complaint-in-intervention, which was granted on February 19, 2010. *See* Baudier Decl. ¶ 9 & Ex. 3. The substantive allegations in the LDEQ complaint are substantially identical to the allegations and claims asserted in the EPA's complaint. *See id.* ¶ 9. Among other relief, the complaints ask the Louisiana Court to order LaGen to remedy and mitigate the alleged damages caused by the pollution allegedly arising from the claimed violations at the Big Cajun II plant. *See id.* ¶ 9; Pl's Compl. Ex. B at 19.

## III.   THE COVERAGE DISPUTE

Following receipt of the EPA's complaint, LaGen gave notice of the Underlying Louisiana Action to ILU on February 20, 2009. *See* Johnson Decl. ¶ 12 & Ex. 2. Via letter dated July 6, 2009, ILU denied coverage. ILU bases its coverage denial on three principal defenses:

First, ILU alleges that the Underlying Louisiana Action does not qualify as a covered "claim," because "it does not allege 'bodily injury,' 'property damage' or 'remediation costs' as those terms are defined" in the Pollution Policy. *See id.* Ex. 3 at 5. The Pollution

-4-

Policy defines "remediation costs" to include "reasonable expenses . . . to . . . mitigate . . .
'pollution conditions' to the extent required by 'environmental law.'" Pl's Compl. Ex. A at "4 of
10." Although the EPA's and LDEQ's complaints specifically state that they are seeking an
order requiring LaGen to "*mitigate . . . the harm to public health and the environment caused by
the violations of the Clean Air Act*" (Pl's Compl. Ex. B at 19; Baudier Decl. Ex. 3 (emphasis
added)), ILU contends that the complaints do not allege "remediation costs." *See* Johnson Decl.
Ex. 3 at 5. According to ILU, the United States' statutory authority is limited to bringing suit for
violations of permitting requirements, and it lacks authority under the Clean Air Act to
commence a suit alleging liability for "remediation costs" (or "bodily injury" or "property
damage") as used in the Pollution Policy. *See id.* at 5.

      Second, ILU contends that even if the Underlying Louisiana Action constitutes a
"claim," the claim was not "first made and reported during the policy period as required by the
Policy's insuring agreements." *See id.*; Pl's Compl. ¶ 37. ILU argues, based on documents it
has obtained – including filings from the Underlying Louisiana Action – that the Underlying
Louisiana Action relates to "an ongoing dispute between [LaGen] and the EPA dating back years
before the Policy was issued," and the "claim" was therefore made before the Pollution Policy's
inception. *See* Johnson Decl. Ex. 3 at 5-6; Pl's Compl. ¶ 37.

      Third, ILU argues that coverage only applies for claims resulting from a
"pollution condition." The Pollution Policy defines "pollution condition" as "the discharge, . . .
dispersal, [or] release . . . of any . . . gaseous . . . . contaminant, or pollutant . . . in [or] into . . .
the atmosphere." Pl's Compl. Ex. A at "4 of 10". Although the EPA's and LDEQ's complaints
allege that "significant amounts of $NO_x$ and $SO_2$ pollution each year have been, and still are
being, released into the atmosphere" as a result of LaGen's alleged violations of the Clean Air

Act (Pl's Compl. Ex. B ¶3; Baudier Decl. Ex. 3), ILU claims that the Underlying Louisiana Action does not involve a claim arising from a "pollution condition." *See* Pl's' Compl. ¶ 38.

Defendants challenged ILU's denial of coverage, and the parties exchanged a series of letters discussing ILU's coverage defenses. *See* Johnson Decl. ¶¶ 14-15. ILU never indicated to LaGen that it intended to file a declaratory judgment action relating to the parties' dispute. *See id.* ¶ 16. Nonetheless, on July 29, 2010, ILU filed the instant action against LaGen and its parent, NRG (the "New York Action"). *See* Baudier Decl. ¶ 17. Eleven days later, LaGen and NRG filed a separate coverage action in the Middle District of Louisiana relating to the parties' coverage dispute (the "Louisiana Action"). *See id.* ¶ 18. The complaint in the Louisiana Action was served on ILU on August 10, 2010. *See id.* Six days later, on August 16, 2010, ILU served its New York complaint on LaGen and NRG. *See id.* ¶ 17. Thus, while the New York Action was filed a few days before the Louisiana Action, the complaint in the Louisiana Action was served first, and the Louisiana Court was the first court to obtain jurisdiction over the parties.

The Louisiana Action has been assigned to United States District Court Chief Judge Ralph Tyson. *See* Baudier Decl. ¶ 18. Chief Judge Tyson is also presiding over the Underlying Louisiana Action brought by the EPA and LDEQ against LaGen. *See id.* ¶10. On August 30, 2010, ILU filed a motion to dismiss or transfer the Louisiana Action to this Court. *See id.* ¶ 19. NRG and LaGen's response to ILU's motion is due on September 20, 2010. *See id.*

## ARGUMENT

### I.   THE "FIRST-FILED" DOCTRINE DOES NOT GOVERN THIS CASE

In its Injunction Motion, ILU places great emphasis on the "first-filed" doctrine. Under this doctrine, "[t]here is a general presumption that 'where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience . . .

-6-

or . . . special circumstances . . . giving priority to the second.'" *Dornoch Ltd. v. PBM Holdings, Inc.*, 666 F. Supp. 2d 366, 369 (S.D.N.Y. 2009) (quoting *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989)).   According to ILU, this Court should enjoin Defendants from proceeding in the Louisiana Action for the sole reason that ILU's suit was filed eleven days before the Louisiana Action.  *See* Pl's Mem. of Law at 5-6.  ILU greatly overstates the importance of the eleven day difference between the filing dates.  Under the circumstances of this action, the timing of ILU's filing carries little, if any, weight.

       As an initial matter, it is unclear that the New York Action is the "first-filed" action for purposes of the first-filed doctrine.  The New York Action was filed a few days before the Louisiana Action, but the complaint in the Louisiana Action was served six days before service of ILU's New York complaint.  *See* Baudier Decl. ¶¶ 17-18.  The Second Circuit has not directly addressed whether a suit that is filed first but served second is entitled to the first-filed presumption, and the decisions of this Court "have reached divergent results."  *Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 178 F. Supp. 2d 459, 463 (S.D.N.Y. 2002) (citing cases).  However, according to the Second Circuit, the first-filed presumption "follows from the basic proposition that the first court to obtain jurisdiction of the parties and of the issues should have priority over a second court to do so."  *Nat'l Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 45 (2d Cir. 1961).  Because a court does not have jurisdiction over the parties until they are served, the Second Circuit's holding in *Fowler* suggests the first-served suit is entitled to priority.

       In any event, whether the New York Action or the Louisiana Action is considered "first-filed" is of little import in this case.  The law of this Circuit is clear that the first-filed presumption "is not to be applied in a 'rigid' or 'mechanical' way," and the presumption "is quite commonly overcome where circumstances warrant."  *Dornoch Ltd.*, 666 F. Supp. 2d at 369

(citations omitted); *see also Raytheon Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 306 F. Supp. 2d 346, 353 (S.D.N.Y. 2004) ("[presumption] should not be applied mechanically"); *Nat'l Patent Dev. Corp. v. Am. Hosp. Supply Corp.*, 616 F. Supp. 114, 118 (S.D.N.Y. 1984) ("[T]he courts should be concerned with what the interests of justice require and not with who won the race [to the courthouse]."). Where the "competing actions have been filed in close proximity and service was not completed in the first case before the second was filed," the first-filed rule "should not be determinative." *Id.* (citations omitted); *see also Jewelamerica v. Frontstep Solutions Group, Inc.*, No. 02 CIV 1328, 2002 WL 1349754, at *1 (S.D.N.Y. June 20, 2002) ("The bulk of precedent in this circuit is that the first-filed rule is usually disregarded where the competing suits were filed only days apart.") (citing cases); *Recoton Corp. v. Allsop, Inc.*, 999 F. Supp. 574, 576 (S.D.N.Y. 1998) (recognizing "exception[] to the first filed doctrine" where there is a "minimal difference in time between the filing of the two actions"). That is exactly the case here: The New York and Louisiana Actions were filed only eleven days apart, and the complaint in the Louisiana Action was served first. Under these circumstances, ILU's filing of the New York Action a few days before the Louisiana Action is not a significant factor for determining the appropriate forum for the parties' dispute.

II.   **PLAINTIFF'S MOTION SHOULD BE DENIED, AND THIS ACTION DISMISSED OR TRANSFERRED, BECAUSE THE BALANCE OF CONVENIENCE FAVORS THE MIDDLE DISTRICT OF LOUISIANA**

Even if the New York Action is considered first-filed, it has long been the rule that a later-filed action may take precedence over a first-filed action when the balance of convenience favors the later-filed action. *See Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir. 1978), *abrogated on other grounds by Prione v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990); *Dornoch Ltd. v. PBM Holdings, Inc.*, 666 F. Supp. at 369; *Raytheon Co.*, 306 F. Supp. at 352-53 ("[A] court may nonetheless depart from the general [first-filed] rule if the

balance of convenience favors proceeding in the second forum."). The factors courts consider in determining whether the balance of convenience exception to the first-filed doctrine applies are generally the same factors courts consider in deciding whether to transfer an action pursuant to 28 U.S.C. § 1404(a). *See AIG Fin. Prods. Corp. v. Public Util. Dist. No. 1 of Snohomish Cnty, Wash.*, 675 F. Supp. 2d 354, 368 (S.D.N.Y. 2009). The factors include: (1) judicial efficiencies and the interests of justice based on the totality of the circumstances; (2) the locus of operative facts; (3) the convenience of the witnesses; (4) the location of relevant documents and ease of access to sources of proof; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the convenience of the parties; (7) the forum's familiarity with the governing law; and (8) the weight accorded the plaintiff's choice of forum. *Id.* at 368.[2]

      As discussed below, these factors weigh heavily in favor of Louisiana over New York. Accordingly, this Court should decline to entertain ILU's declaratory judgment complaint and dismiss this action pursuant to 28 U.S.C. § 2201. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) ("[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."). In the alternative, this action should be transferred to the Middle District of Louisiana pursuant to 28 U.S.C. § 1404.

A.    **Judicial Economy And The Interests Of Justice Strongly Favor The Louisiana Court**

      Judicial economy favors litigation of this dispute in the Louisiana Court. First, as explained in section IV below, this Court lacks personal jurisdiction over LaGen. The Louisiana Court, in contrast, has personal jurisdiction over all the parties to the dispute – ILU, NRG and

---

[2] Courts also identify the "relative means of the parties" as an additional factor. *See id.* That factor is irrelevant in this case, as all parties are substantial companies that have adequate means to litigate in any court in the United States.

LaGen – and is therefore the only court that can resolve all the claims in one proceeding. *See* Pl's Compl. Ex. A at Endorsement 13 (providing that ILU will consent to jurisdiction in any court of competent jurisdiction); *Bank of Am., N.A. v. Hensley Props., LP,* 495 F. Supp. 2d 435, 439 (S.D.N.Y. 2007).

Second, the Louisiana Action has been assigned to Chief Judge Tyson, who is also presiding over the Underlying Louisiana Action. *See* Baudier Decl. ¶¶ 10, 18. The Louisiana Court is therefore already familiar with the law that will govern resolution of ILU's primary coverage defense – i.e., that the Clean Air Act does not authorize the United States and LDEQ to obtain the order it seeks requiring LaGen to "mitigate" the alleged pollution caused by its claimed violations. Chief Judge Tyson will necessarily address the permissible and proper scope of remedies available to the EPA and LDEQ in the Underlying Louisiana Action. Litigating that issue both in this Court and the Louisiana Court would not only lead to duplicative litigation, it could result in inconsistent decisions. *See Wyndham Assocs. v. Bintliff, A.G.,* 398 F.2d 614, 619 (2d Cir. 1968) (recognizing "a strong policy favoring the litigation of related claims in the same tribunal" so that "duplic[ative] litigation can be avoided" and "inconsistent results can be avoided"). Any such duplication of effort and risk of inconsistent results would be avoided by dismissing the New York Action or transferring it to the Middle District of Louisiana.

Third, Louisiana has an interest in ensuring that its residents obtain the insurance coverage to which they are entitled, particularly for losses occurring within the state. *See Peavey Co. v. M/V ANPA,* 971 F.3d 1168, 1172 (5th Cir. 1992) (recognizing Louisiana interest in protecting insurance rights of its residents). In contrast, New York has no interest in this dispute, as none of the parties are residents of New York and the underlying loss is not in New York.

Accordingly, the judicial efficiencies and interests of justice factors weigh in favor of dismissing this action or transferring it to the Middle District of Louisiana.

**B.    Locus of Operative Facts Favors The Louisiana Court**

The locus of operative facts is the "primary factor" considered by courts when considering the motion to transfer factors, and this factor also favors transfer to the Middle District of Louisiana. *See Fireman's Fund Ins. Co. v. Pers. Comms. Devices, LLC*, No. 09-cv-1349, 2009 WL 1973534 (S.D.N.Y. July 8, 2009) (citation omitted). The locus of operative facts factor "helps the court identify a suit's 'center of gravity,'" and thus, where it should properly proceed. *Id.* at *3. The operative facts for the dispute before the Court relate to Louisiana and other states, but not New York.

The crux of this dispute is whether the EPA's and LDEQ's claims against LaGen fall within the scope of the Pollution Policy issued by ILU. Contrary to ILU's suggestion, the relevant facts are not limited to what occurred during the underwriting of the policy and what the policy says. *See* Pl's Mem. Law at 4, 8-9. The operative facts also necessarily include what happened and is happening in Louisiana in the Underlying Louisiana Action. Indeed, it defies credulity to assert that a coverage dispute over a claim that is pending in Louisiana against a company headquartered in Louisiana arising out of the operations of a power plant in Louisiana somehow have nothing to do with Louisiana. Courts have transferred similar insurance coverage disputes to the forum where the events underlying the dispute took place, holding that the operative facts in coverage disputes include facts relating to the underlying liability. *See, e.g., Fireman's Fund*, 2009 WL 1973534 at *4 (holding that the activities of the policyholder were relevant to the coverage defenses asserted by the insurer); *Meyers v. Allstate Ins. Co.*, No. 08-cv-4769, 2009 WL 804672 (S.D.N.Y. March 26, 2009) (transferring insurance coverage matter to the jurisdiction where the underlying car accident took place).

-11-

Moreover, even if the Court were to look only to the location where the insurance policy was underwritten and made, this factor would be neutral. ILU cannot point to any New York-related fact concerning the issuance of the Pollution Policy. The sole facts cited by ILU that relate to New York are (1) that the ILU claims handler happens to live *but not work* in New York, and (2) that ILU's denial of coverage issued from a New York office. *See* Pl's Mem. of Law at 3. Those are insufficient grounds for this Court to refuse to transfer this action. *See Royal & Sunalliance v. British Airways*, 167 F.Supp.2d 573, 577 (S.D.N.Y. 2001) (adjustment of insurance claim in plaintiff's chosen forum accorded little weight in deciding appropriate venue for dispute).

**C.    Convenience Of Witnesses And Documents, And Availability Of Process To Compel Attendance Of Witnesses, Favors The Louisiana Court**

ILU argues that there are no potential witnesses or documents relevant to the instant dispute in Louisiana. *See* Pl's Mem. of Law. at 4, 8-9. ILU instead contends, in conclusory fashion and without support, that the parties' coverage dispute "will be resolved b[y] a review of the pleadings, the Policy and applicable law." *Id* at 4.[3] ILU does identify, however, a few potential witnesses. According to ILU, it is "likely" the parties' coverage dispute will require the testimony of only one non-party witness – NRG's insurance broker, Wachovia Insurance Company, located in Washington, DC – and notes that the dispute could possibly

---

[3] Notably, ILU's position that the parties' dispute "will be resolved b[y] a review of the pleadings, the Policy and applicable law," only applies to its request for a declaration that it owes no duty to defend LaGen. Although an insurer's duty to defend generally can be determined based on the language in the relevant policy and underlying complaint, a determination as to ILU's duty to *indemnify* LaGen must await the resolution of the underlying suit. *See Sarin v. CNA Fin. Corp.*, No. 601453/07, 2008 WL 4302951 (N.Y. Sup. Ct. Sept. 12, 2008) (duty to defend is determined from the allegations of the complaint and the terms of the policy); *Tabor v. Anco Insulations, Inc.*, 999 So.2d 258 (La. App. 2008) (same); *Mossy Motors, Inc. v. Cameras Am.*, 898 So.2d. 602 (La. App. 2005) (holding that the time to make a determination of the duty to indemnify is after there is a judgment on the merits); *Zurich-Am. Ins. Co. v. Atlantic Mut. Ins. Co.*, 139 A.D.2d 379 (N.Y. App. Div. 1988) (same).

implicate facts "relevant to the underwriting of the Policy," which "took place in Pennsylvania, New Jersey and Washington, D.C." *See id.* at 9. ILU's contention that the coverage dispute can be resolved with virtually no witnesses or evidence is belied by the nature of ILU's coverage defenses. As discussed below, resolution of ILU's coverage defenses involves numerous potential witnesses and other documentary evidence.

### 1.   ILU's Coverage Defense That The Underlying Louisiana Claim Was Not First Made And Reported During The Policy Period

One of ILU's coverage defenses is that the claim for which LaGen seeks coverage was made before the inception of the Pollution Policy, and therefore was not "first made and reported during the policy period as required by the Policy's insuring agreements." *See* Johnson Decl. Ex. 3 at 5. In support, ILU relies on its own determination – based on documents *from the Underlying Louisiana Action*, among others – that "[LaGen] and the EPA were involved in lengthy settlement discussions pertaining to the Notices of Violation during the period December 8, 2006 to February 2009." *Id.* at 5-6. LaGen's defense places at issue what occurred between LaGen and the EPA during 2006-2009. Many of the witnesses with information relevant to this issue are in Louisiana, including Jeffrey Baudier (LaGen President, NRG Senior Vice President, Regional President for the NRG South Central Region, and former Regional General Counsel for the NRG South Central Region) and Gary Ellender (LaGen Regional Environmental Manager). *See* Baudier Decl. ¶4, 13. Although some potential witnesses are located outside of Louisiana, such as the EPA employees who issued the NOVs, who are located in Texas and Washington, DC, none of the potential witnesses are located in New York. *See id.* ¶¶ 14-16.

Further, all of LaGen's documents and other evidence relating to the EPA's NOVs for the Big Cajun II plant, and the subsequent communications between LaGen, the EPA,

and LDEQ, are located in New Roads, Louisiana, either at LaGen's Louisiana headquarters, the Big Cajun II plant, or off-site storage. *See id.* ¶ 12. The documents in EPA's possession from the 2006-2009 time period that bear on the issue are likely at their offices in Texas or Washington, DC, or at the Department of Justice's offices in Baton Rouge, Louisiana or Washington, DC, but there is no evidence they are located in New York. *See id.* ¶¶ 14-15.

In addition, the Pollution Policy reflects that LaGen provided a report relating to the Big Cajun II site to ILU when it applied for the Policy. *See* Pl's Compl. Ex. A at Endorsement 3; Johnson Decl. ¶ 5 & Ex. 1. Rather than excluding the site from the Pollution Policy's coverage, ILU added the site to the Pollution Policy's list of "Covered Sites." *See* Pl.'s Compl. Ex. A at Endorsment 1; Johnson Decl. ¶ 9. Potential witnesses relating to these facts include the individuals involved in the preparation of the Big Cajun II report, the preparation of the insurance application, the underwriting for the Pollution Policy, and the negotiations relating to the purchase of the Pollution Policy. *See id.* ¶¶ 4-8. These witnesses include individuals in several states, including Louisiana, Minnesota, Pennsylvania, Texas and California, but none of the known potential witnesses are located in New York. *See id.* ¶¶ 4-10.

Accordingly, this defense involves several potential witnesses and documents in Louisiana, but no witnesses or documents in New York.

### 2. ILU's Coverage Defense Based On Its Claim That The EPA And LDEQ Are Not Authorized To Obtain The "Mitigation" Relief They Seek In The Underlying Louisiana Action

ILU's coverage defense based on the type of relief sought by the EPA and LDEQ in the Underlying Louisiana Action also involves potential witnesses and documents located in Louisiana. As noted above, ILU has denied coverage for the Underlying Louisiana Action on the basis that the EPA and LDEQ are not authorized to seek mitigation or abatement of any existing pollution, but rather are limited to bringing suit for violation of permitting requirements.

-14-

*See* Johnson Decl. Ex. 4 at 2. The impact of this defense on ILU's duty to defend will likely turn in large part on the language of the Pollution Policy and the complaints filed in the Underlying Louisiana Action. However, the effect of the defense on ILU's duty to *indemnify* will turn on the actual nature of any liability that may be imposed on LaGen as a result of the Underlying Louisiana Action. *See Richmond Farms Dairy, LLC v. Nat'l Grange Mut. Ins. Co.*, 60 A.D. 3d 1411 (N.Y. App. Div. 2009) (holding that the duty to indemnify may only be imposed in the event that the insured is liable for a loss that is covered by the policy).

If the Underlying Louisiana Action is resolved by settlement, the terms of that settlement and the surrounding circumstances will bear on whether ILU must indemnify LaGen for the settlement. Testimony from the persons who negotiated any such settlement on behalf of LaGen, the EPA, and LDEQ, and evidence relating to the settlement and its surrounding circumstances, may be necessary to resolve the indemnity issue. *See Stellar Mech. Servs. of New York, Inc. v. Merchs. Ins. of New Hampshire*, 74 A.D.3d 948 (N.Y. App. Div. 2010). If the Underlying Louisiana Action is instead litigated to judgment in the remedy phase, the scope of the court's judgment and the types of relief awarded will bear on the indemnity issue. The testimony of the persons involved in the remedy phase of the Underlying Louisiana Action, and evidence relating to the remedies awarded (if any), will need to be examined to determine ILU's indemnification obligations.

In either case, the potential witnesses and evidence will certainly be centralized in Louisiana. The potential LaGen witnesses and LDEQ witnesses will be located in Louisiana, and the LDEQ witnesses are not subject to compulsory service in New York. The potential EPA witnesses are located in Louisiana, Texas and Washington, DC. Further, the majority of

documents relevant to the indemnification issue will be located in Louisiana. None of the potential witnesses or documents are in New York.

An evaluation of the potential witnesses and evidence relating to these two defenses make it plain that this dispute has a strong connection with Louisiana, and absolutely no connection to New York. Accordingly, this factor favors dismissal of this action or transfer to the Louisiana Court.

### D.    The Convenience Of The Parties Favors The Louisiana Forum

The convenience of the parties is another factor that weighs in favor of the Louisiana Court. The convenience for NRG and ILU is neutral factor, because neither company has its place of incorporation or headquarters in New York or Louisiana. *See* Baudier Decl. ¶ 3; Pl's Compl. ¶¶ 9-10. LaGen, however, is headquartered in New Roads, Louisiana. *See* Baudier Decl. ¶ 3. It would therefore be more convenient for LaGen to litigate the instant dispute in the Louisiana Court.

### E.    Forum's Familiarity With Governing Law

According to ILU, the choice of law provision in the Pollution Policy requires application of New York law to the instant dispute. *See* Pl's Mem. of Law at 2. It is unclear at this point whether New York law will apply, given the lack of contacts between the policy and New York. *See, e.g., Welsbach Elec. Corp. v. MasTech N. Am. Inc.,* 859 N.E.2d 498, 500 (N.Y. 2006) (holding that courts will not enforce choice of law provisions that do not bear a "reasonable relationship to the parties or transactions"). However, even if the choice of law provision is enforceable, New York law would not be the only law applied in this case. One of ILU's principal coverage defenses is that, even though the underlying complaints against LaGen expressly seek an order requiring LaGen to "mitigate" the pollution its claimed violations of the Clean Air Act and Louisiana SIP are alleged to have caused, the Clean Air Act does not permit

such relief. This issue requires interpretation of the Clean Air Act and Louisiana SIP. Chief Judge Tyson will necessarily be familiar with these laws, because he is also presiding over the Underlying Louisiana Action. Moreover, Chief Judge Tyson is certainly capable of applying New York law to the insurance policy interpretation issues, if New York law is determined to apply. *See Adam v. Jacobs*, 950 F.2d 89, 94 (2d Cir. 1991) (Michigan district court "is quite capable of honoring . . . choice of law agreement" requiring application of New York law).

**F.    ILU's Choice Of Forum Is Entitled To No Deference**

ILU's choice of this forum is not entitled to deference. Although courts may accord weight to a plaintiff's choice of forum, *see Herbert Ltd. Partnership v. Electronic Arts Inc.*, 325 F. Supp. 2d 282, 291 (S.D.N.Y. 2004), "where, as here, the plaintiff has chosen a forum that is neither the district of its residence, nor the locus of the operative facts in the case, this choice is considerably less important." *POSVEN, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 405 (S.D.N.Y. 2004). Moreover, ILU's preferred forum should be given little weight because ILU contractually agreed to litigate any dispute arising out of the Pollution Policy in a forum of Defendants' choosing. In Endorsement 13 of the Policy, ILU agreed that it would "submit to the jurisdiction of any court of competent jurisdiction" requested by Defendants, and that ILU would "accept the final decision of that court or any Appellate Court in the event of an appeal." *See* Pl's Compl. Ex. A at Endorsement 13. Accordingly, when ILU sold the policy, it agreed that any court of competent jurisdiction would be an acceptable forum.

**III.    THE JURISDICTION CLAUSE IN THE POLLUTION POLICY DOES NOT REQUIRE LITIGATION OF THE PARTIES' DISPUTE IN THIS COURT**

ILU suggests in its Injunction Motion that the Pollution Policy includes a mandatory, exclusive forum selection clause requiring the litigation of the parties' dispute in this

Court.  *See* Pl's Mem. of Law at 7-8.  The Pollution Policy requires no such thing.  The

"Jurisdiction and Venue"[4] clause on which ILU relies states:

> It is agreed that in the event of the failure of the Insurer to pay any
> amount claimed to be due hereunder, the Insurer and the "insured"
> will submit to the jurisdiction of the State of New York and will
> comply with all requirements necessary to give such court
> jurisdiction.  Nothing in this clause constitutes or should be
> understood to constitute a waiver of the Insurer's right to remove
> an action to the United States District Court.

Pl's Compl. Ex. A at "10 of 10."  As explained below, jurisdiction clauses such as this one are

not mandatory forum selection clauses and do not limit the action to the forum identified.

Further, ILU's reliance on the clause is misplaced, because the clause provides only that the

parties will consent to jurisdiction in the *state courts* of New York, not federal courts located in

the state.

A.     **The Jurisdiction Clause Is Permissive, Not Mandatory**

Courts draw a distinction between mandatory forum selection clauses, which

make the selected forum the exclusive forum, and permissive forum selection clauses, which do

not limit the forum to the site identified in the clause.  *See John Boutari & Son, Wines & Spirits,*

*S.A. v. Attiki Imps. & Distribs. Inc.*, 22 F.3d 51, 52-53 (2d Cir. 1994); *Orix Credit Alliance, Inc.*

*v. Mid-South Materials Corp.*, 816 F.Supp. 230, 233 (S.D.N.Y. 1993) (noting "clear distinction

between permissible forum-selection clauses and mandatory clauses").  To be deemed

mandatory, the language must go beyond establishing that a particular forum will have

jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive.

*See John Boutari*, 22 F.3d at 53 ("[A]n agreement conferring jurisdiction in one forum will not

---

[4] Pursuant to paragraph L of the Pollution Policy, entitled "Headings," the headings in the policy
"are inserted solely for convenience and do not constitute any part of the terms or conditions [of
the Policy]."  Pl's Compl. Ex. A at "10 of 10."

be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion."). To establish a clear indication of intent for a jurisdiction to be exclusive, courts require words such as "shall" or "exclusive jurisdiction." *See Orix Credit Alliance*, 816 F.Supp. at 233 (drawing distinction between clause stating that the parties "*agree to the jurisdiction of a court,*" which is permissive, and mandatory clauses such as those stating that "a court *shall* have jurisdiction" or that the court "would be the exclusive forum for all disputes arising out of th[e] contract") (emphasis in original). Where, as here, the language merely states that the parties will submit to a particular court's jurisdiction, courts have interpreted the language as permissive rather than exclusive. *See id.*

The jurisdiction clause in the Pollution Policy lacks language indicating that it is intended to provide an exclusive forum for the parties' disputes. Indeed, one of the cases cited by ILU addressed a similar clause and held that it was permissive rather than mandatory. *See Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 53, 58 (S.D.N.Y. 2001). Further confirmation of the permissive nature of the forum clause in the Pollution Policy is provided by Endorsement 13, in which ILU expressly agreed that it would "submit to the jurisdiction *of any court of competent jurisdiction*" upon request by the policyholder. *See* Pl's Compl. Ex. A at Endorsement 13 (emphasis added). The forum clause in the Pollution Policy is therefore only a "jurisdiction-conferring clause, which, although providing [the parties] with a guaranteed forum, does not deprive [them] of the right to sue in another having personal jurisdiction over the [parties]." *AVC Nederland B.V. v. Atrium Inv. P'ship*, 740 F.2d 148, 155 (2d Cir. 1984).

**B.    The Forum Clause Does Not Apply To This Court**

ILU's reliance on the jurisdiction clause fails for another reason: The jurisdiction clause does not apply to federal courts. The forum clause plainly states that the parties consented to the "jurisdiction of the State of New York." *See* Pl's Compl. Ex. A at "10 of 10." While this

-19-

federal Court sits in New York, it is not a court "*of* the State of New York." By its plain language, the provision applies only to the state courts of New York, not federal courts located there.

The last sentence in the provision confirms this interpretation. That sentence states that "[n]othing in this clause constitutes or should be understood to constitute a waiver of the Insurer's right to remove an action to the United States District Court." If the reference in the first sentence to the "jurisdiction of the State of New York" included the United States District Courts in addition to New York state courts, this last sentence would be superfluous. Such an interpretation must be rejected, because the last sentence serves a clear purpose: it confirms that ILU's consent to the jurisdiction of the state courts of New York was not to be deemed exclusive, and ILU was not waiving its right to remove any such case to a federal district court. *See LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (contract interpretation "that has the effect of rendering at least one clause superfluous . . . is not preferred and will be avoided if possible") (citation and quotation marks omitted). This last sentence therefore establishes a clear distinction between the courts in which the parties were consenting to jurisdiction via the first sentence, and the United States District Courts.

Further, if ILU had wanted the provision to apply to federal courts as well as state courts in New York, it could easily have said so. *See, e.g., Dornoch Ltd.*, 666 F. Supp. at 366 (S.D.N.Y. 2009) (policy stated that the insurer and insured "irrevocably consent to the jurisdiction of the United States District Court and the State courts of New York"); *Israel v. Chabra*, 537 F.3d 86, 90 (2d Cir. 2008) (contract stated that the parties "irrevocably and unconditionally consent[] to submit to the exclusive jurisdiction of the federal and New York State courts located in the City of New York"); *JP Morgan Chase Bank, N.A. v. Coleman Toll*

*Ltd. P'ship*, No. 08 civ 10571, 2009 WL 1457158, *3 (S.D.N.Y. May 26, 2009) (contract stated the parties consented "to the nonexclusive jurisdiction and venue of the state or federal courts located in the City of New York").  ILU elected not to draft the language to encompass the federal courts, and the clause therefore offers no support for this Court's exercise of jurisdiction over a dispute that has nothing to do with New York.[5]

## IV.   THE CLAIMS AGAINST LAGEN SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

In addition to the above-stated grounds, this Court also should grant Defendants' Cross-Motion and dismiss the claims against LaGen for lack of personal jurisdiction.  Contrary to ILU's assertion, LaGen did not consent to the personal jurisdiction of this federal Court pursuant to the Pollution Policy's "Jurisdiction and Venue" clause because the jurisdiction clause applies only to the state courts of New York, not the federal courts.  *See* Pl's Mem. of Law at 8.[6] Accordingly, jurisdiction is only proper if ILU can establish that the traditional requirements for personal jurisdiction are satisfied.  As discussed below, they are not.

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction.  *See NewMarkets Partners LLC v. Oppenheim*, 638 F. Supp. 2d 394, 400 (S.D.N.Y. 2009).  ILU cannot meet this burden, because LaGen has *no*

---

[5] Even if the Court were to determine that the Jurisdiction Clause can be interpreted as encompassing both the federal and state courts, that interpretation is not the only reasonable one. It is entirely reasonable to interpret the clause "the jurisdiction of the State of New York" to include the New York state courts only.  If the provision is susceptible to two reasonable interpretations, it is ambiguous and must be construed against ILU, the drafter of the policy.  *See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 390 (2d Cir. 2005) (under New York law, "a 'policy must be construed in favor of the insured, and ambiguities, if any, are to be resolved in the insured's favor and against the insurer.'") (quoting *U.S. Fid. & Guar. Co. v. Annunziata*, 67 N.Y.2d 229, 232 (1986)).

[6] This argument applies with equal force to NRG.  However, NRG does not contest that it has sufficient contacts with New York to allow this Court to exercise personal jurisdiction over it. As discussed below, the same is not true for LaGen, which has no contacts to New York.

contacts with New York, whether arising out of this coverage action or otherwise. *See* Baudier Decl. ¶¶ 5-6.

"A federal court's jurisdiction over non-resident defendants is governed by the law of the state in which the court sits and the requirements of due process." *NewMarkets Partners*, 638 F. Supp. 2d at 400 (citing *Henderson v. INS*, 157 F.3d 106, 123 (2d Cir. 1998)). For this Court to have general jurisdiction over a non-resident corporation, the corporation must be engaged in "continuous, permanent, and substantial activity in New York." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000) (citation omitted); *see also* N.Y. C.P.L.R. § 301. To have specific jurisdiction over a non-resident corporation, the corporation must be (a) transacting business within New York; (b) committing a tort within New York; (c) committing a tort that causes injury within New York; or (d) owning real property within New York. *See* N.Y. C.P.L.R. § 302(a)(1-4). In addition, for specific jurisdiction, there must be a "strong nexus between the plaintiff's cause of action and the defendant's in state conduct." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 564 (S.D.N.Y. 2000) (citing *Welsh v. Servicemaster Corp.*, 930 F. Supp. 908, 910 (S.D.N.Y. 1996)).

ILU cannot demonstrate that the requirements for general or specific jurisdiction are satisfied as to LaGen. LaGen is a Delaware company with its principal place of business in New Roads, Louisiana. *See* Baudier Decl. ¶ 3. Its operations involve the ownership and operation of the Big Cajun I and Big Cajun II power stations in New Roads, Louisiana, and the operation of other power generation assets in the State of Louisiana. *See id.* ¶ 6. It does not conduct business in New York and does not own real property in the state. *See id.* ¶ 5. Moreover, the coverage dispute at issue does not have any nexus, much less the requisite "strong nexus," with any operations of LaGen in New York.

-22-

ILU has pled no facts in its Complaint to establish personal jurisdiction over LaGen, and ILU will not be able to make a *prima facie* case that this Court has personal jurisdiction over LaGen. *See C.B.C. Wood Prods., Inc. v. LMD Integrated Logistics Servs., Inc.* 455 F. Supp. 2d 218 (E.D.N.Y. 2006) (finding no *prima facie* case of specific jurisdiction where the only contact defendant had in New York was sending copies of invoices and receipts to plaintiff's New York address); *NewMarkets Partners LLC,* 638 F. Supp. 2d at 401.   (finding no specific jurisdiction where the only contacts defendants had with the forum with regard to the subject matter of the lawsuit were sporadic contacts by telephone or email that never resulted in a formal business arrangement and did not demonstrate any purposeful availment by defendant in New York). The claims against LaGen therefore should be dismissed.

## V.    THIS ACTION SHOULD BE DISMISSED FOR IMPROPER VENUE

This action also should be dismissed pursuant to Rule 12(b)(3) for improper venue.  Plaintiff seeks to establish jurisdiction based on diversity of citizenship between the parties. As such, under 28 U.S.C § 1391(a), venue is only proper in a judicial district:

> (1)    where any defendant resides, if all defendants reside in the same State,

> (2)    a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

> (3)    a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Because LaGen and NRG do not reside in New York, venue is not proper under Section 1391(a)(1).

Likewise, Section 1391(a)(2) is not applicable because "a substantial part of the events or omissions giving rise to the claim" did not occur in New York.  As discussed in detail

above, the events and omissions that gave rise to the instant coverage claim did not occur in New York. Indeed, ILU's motion essentially concedes this point. *See* Pl's Mem. of Law at 9 (identifying no events, witnesses or evidence in New York).

Finally, Section 1391(a)(3) does not apply because there is another venue – the Middle District of Louisiana – where this coverage action could have been brought. It is clear that a substantial part of the events giving rise to the parties' coverage dispute occurred in Middle District of Louisiana, because that is where LaGen and Big Cajun II are located and where the claim for which LaGen seeks coverage is pending. *See* Baudier Decl. ¶¶ 3, 6-11. Venue is therefore appropriate in the Middle District of Louisiana under Section 1391(a)(2).

ILU asserts that venue is proper in this Court because LaGen and NRG allegedly consented to venue pursuant to the "Jurisdiction and Venue" provision in the Pollution Policy. *See* Pl's Mem. of Law at 8. ILU is wrong. As discussed above, that provision provides that the parties consented to the jurisdiction of the *state courts* of New York, not the federal courts. Accordingly, LaGen did not consent to venue in this Court.

## CONCLUSION

For all the foregoing reasons, Defendants request that Plaintiff's motion be denied and this action be dismissed or, in the alternative, transferred to the Middle District of Louisiana.

Dated:  September 7, 2010                          Respectfully submitted,


                                                   Jeremy M. King
                                                   DICKSTEIN SHAPIRO LLP
                                                   1633 Broadway
                                                   New York, New York 10019-6708
                                                   Tel:  (212) 277-6500
                                                   Fax:  (212) 277-6501

                                                   Of Counsel:
                                                   John E. Heintz (*pro hac vice* application pending)
                                                   Marla Kanemitsu (*pro hac vice* application pending)
                                                   Shavon J. Smith (*pro hac vice* application pending)
                                                   DICKSTEIN SHAPIRO LLP
                                                   1825 Eye Street, NW
                                                   Washington, D.C. 20006-5403
                                                   Tel:  (202) 420-2200
                                                   Fax:  (202) 420-2201

                                                   *Counsel for Defendants NRG Energy Inc. and
                                                   Louisiana Generating LLC*