UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LOUISIANA GENERATING LLC and
NRG ENERGY, INC.,

VERSUS

ILLINOIS UNION INSURANCE COMPANY

CIVIL ACTION

10-516-JJB-SCR

**RULING**

These matters are before the Court on two motions. The first is a Motion (doc. 161) for an Award of Attorneys' Fees brought by Louisiana Generating LLC and NRG Energy, Inc. (collectively referred to herein as "LaGen"). Illinois Union Insurance Company ("ILU") has filed an opposition (doc. 183). Several replies have been filed by both parties. The second is a Motion (doc. 175) for Summary Judgment on Defense Cost Damages brought by LaGen. ILU has filed an opposition (doc. 192). Several supplemental briefs and replies have been filed by both parties. LaGen has submitted unredacted copies of attorney invoices to the Court for *in camera* review. This Court has jurisdiction pursuant to 28 U.S.C. § 1332. For the reasons stated herein, LaGen's motions (docs. 161 & 175) are GRANTED.

I.   **Background**

The crux of this highly contentious dispute is ILU's obligation to defend LaGen pursuant to a Premises Pollution Liability II Insurance Policy (the "Policy") issued by ILU. The underlying suit, instituted by the Environmental Protection Agency ("EPA") and later joined by the Louisiana Department of Environmental Quality ("LDEQ"), involved allegations that LaGen had performed work on its coal-fired electric steam generating plant that increased certain emissions. It was alleged that this work was done without the requisite permit in violation of the Clean Air Act. Once faced with legal action from both the EPA and LDEQ, LaGen sought the

1

benefit of the ILU issued Policy to defend against the claim. ILU denied coverage and LaGen was forced to pay for its defense costs out of pocket.

LaGen challenged ILU's denial of coverage through a series of letters exchanged between the parties. Additionally, the parties met to discuss the coverage dispute. However, while negotiations were seemingly ongoing, ILU filed a declaratory judgment action in the United States District Court for the Southern District of New York seeking a declaration that it had no obligation to cover the defense costs incurred by LaGen during the underlying action. Believing that venue was improper in the Southern District of New York, LaGen filed a declaratory judgment in this Court seeking a declaration that ILU had a duty to defend arising under the Policy. Concomitantly, LaGen filed a motion to dismiss in the Southern District of New York, or in the alternative, a motion to transfer the case to the Middle District of Louisiana. After reviewing the motions, including one concerning the propriety of venue in the Southern District of New York, that court granted LaGen's motion to transfer and the declaratory action was transferred to this Court where the underlying action was also being adjudicated. Once transferred, both LaGen and ILU moved to have both LaGen's and ILU's filed declaratory actions consolidated, which the Court subsequently did.

After the Court decided to bifurcate the trial into a duty to defend phase and an indemnity phase, both LaGen and ILU filed cross-motions for summary judgment to resolve the duty to defend issue. After reviewing the briefs, the Court granted LaGen's motion and denied ILU's holding that the Policy imposed a duty upon ILU to defend LaGen in the underlying suit. *Ruling*, Doc. 111, at 8. After the Court's ruling, LaGen moved to recoup attorneys' fees incurred during the litigation to obtain a ruling on the duty to defend. (Doc. 113). ILU moved to stay consideration of this motion until its motion for a new trial, or in the alternative, for certification

for immediate appeal of the Court's duty to defend ruling was determined. (Doc. 124). The Court treated ILU's motion as one for reconsideration and denied it, but certified its ruling for immediate appeal. The Court also dismissed LaGen's motion for attorneys' fees without prejudice pending the Fifth Circuit's resolution of the appeal. Subsequently, the Fifth Circuit affirmed this Court's ruling confirming that ILU had a duty to defend in the underlying action and refused ILU's later petition for a rehearing. The case was remanded to this Court where it currently stands.

Now, LaGen seeks recovery of two types of fees: (1) the attorneys' fees associated with resolving the issue of ILU's duty to defend; and (2) the defense costs incurred during the litigation of the underlying action. As to the first type of fees, LaGen argues that it is entitled to attorneys' fees because it was placed in a defensive position once ILU filed its declaratory judgment in a New York federal court. LaGen argues that this result is mandated under applicable New York state law precedent which also holds that LaGen's submitted attorneys' fees are entitled to the presumption of reasonableness. LaGen further argues that New York state law provides that it is entitled to prejudgment interest. While ILU does not contest the general rule upon which LaGen relies, ILU does contest LaGen's assertion that it was placed in a defensive position, arguing instead that it was ILU that was placed in a defensive position when LaGen filed and *served* ILU its petition from this Court. ILU further argues that LaGen's fees are not entitled to a presumption of reasonableness and asserts that a reasonableness analysis must be conducted by looking at the reasonable rates of attorneys in the local forum.

Concerning the second type of fees, LaGen argues that it is entitled to the defense costs incurred during the underlying action as provided for under the Policy. It again avers that its fees are entitled to the presumption of reasonableness and that it is entitled to prejudgment interest.

3

Alternatively, and in the event the Court finds that its fees are not entitled to a presumption of reasonableness, LaGen argues that its fees were justified given the complexity of the issues involved, the potential liability, and the obtained results. In response, ILU argues that LaGen's rates are unreasonable because they are inconsistent with reasonable rates in the local forum. Additionally, ILU requests additional time to allow a third-party consultant to review LaGen's submitted invoices and conduct a reasonableness analysis.

II.  Discussion
  a. LaGen is entitled to Attorneys' Fees Incurred While Litigating ILU's Duty to Defend
    i.  LaGen was cast in a Defensive Posture

Under New York law,[1] an insured may recover costs incurred to enforce an insurer's duty to defend when the insured is placed in a "defensive posture" by an insurer who has taken legal steps to free itself from its obligations under the insurance policy. *Mighty Midgets, Inc. v. Centennial Ins. Co.,* 389 N.E.2d 1080, 1085 (N.Y. 1979). The issue here is whether LaGen was placed in a defensive posture.

ILU argues that LaGen was not placed in a defensive posture because though ILU filed suit in New York, it did not effectuate service of process, and therefore, the institution of the suit was not complete. The argument continues that LaGen acted affirmatively when it filed suit in this Court, forcing ILU to be a party to the declaratory suit. ILU's argument is unpersuasive and ILU has failed to provide any case law to support its asserted distinction between filing and serving suit. To the contrary, courts look beyond mechanical formulations like the one upon which ILU would like this Court to rely. *Danaher Corp. v. Travelers Indem. Co.*, No. 10 Civ. 0121(JPO)(JCF), 2013 WL 364734, *3 (S.D.N.Y. Jan. 31, 2013) ("[C]ourts have made clear that in certain cases the rule need not be quite so mechanically applied."). Moreover, courts have

---

[1] The parties agree and the Court has previously found that New York law governs this case. *See Ruling*, Doc. 111, at 7.

interpreted the actions constituting "legal steps" to free itself from its obligations broadly and found that filing suit is sufficient to cast an insured in a defensive posture. *See Specialty Nat. Ins. Co. v. English Bros. Funeral Home*, 606 F.Supp.2d 466, 473 (S.D.N.Y. 2009) (finding that "by taking steps—that is, filing this action," the insurer had placed the insured in a defensive posture); *American Motorists Ins. Co. v. GTE Corp.*, Nos. 99CV512 (RCC), 99CV2214 (RCC), 2000 WL 1459813 (S.D.N.Y. Sept. 29, 2000) (finding that the insured was entitled to attorneys' fees despite filing suit because the insured's case was in direct response to the insurer's attempt to avoid its obligations under the policy); *City of New York v. Zurich-American Ins. Group*, 811 N.Y.S.2d 773, 775 (N.Y. App. Div. 2006) (concluding that the insurer casted the insured in a defensive position when it filed motions after the trial court granted the insured's motion for summary judgment). In the present matter, the Court finds that LaGen was cast in a defensive posture when ILU filed suit in the Southern District of New York. Furthermore, by filing suit in this Court, LaGen was acting in direct response to the affirmative action taken by ILU when it filed suit. Accordingly, LaGen is entitled to receive its reasonable attorneys' fees. The issue the Court must now determine is whether the fees sought by LaGen are reasonable.

### ii. LaGen's Fees Are Reasonable

In its motion, LaGen seeks $2,403,286.39[2] in attorneys' fees and costs plus prejudgment interest.[3] ILU challenges the reasonableness of LaGen's attorneys' fees contending that the fees are exorbitant in light of the hourly rate charged by attorneys in the local forum. LaGen responds that its fees are reasonable under the exception to the forum rule given the complexity

---

[2] This amount includes the $2,277,539.99 originally sought plus an additional $47,078.68 sought for payments made on two additional invoices that were billed after the filing of the Motion (doc. 161) for Attorneys' Fees and $35,537.00 for work performed by Baker Botts related to the duty to defend action. (Doc. 188).

[3] Under New York law, LaGen is entitled to prejudgment interest at a rate of 9% per annum. N.Y. C.P.L.R. §§ 5001 & 5004. Interest accrues from the date LaGen paid each invoice. § 5001(b) ("interest shall be computed upon each item from the date it was incurred"). ILU does not contest an award of prejudgment interest.

of the coverage dispute and its counsel's expertise in the unique issues that the duty to defend litigation presented.[4]

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "The fee applicant has the burden of presenting adequate documentation of the hours reasonably expended." *League of United Latin American Citizens No. 4552 v. Roscoe Independent School District*, 119 F.3d 1228, 1233 (5th Cir. 1997). "[T]he burden of proof of reasonableness of the number of hours is on the fee applicant, and not on the opposing party to prove their unreasonableness." *Leroy v. City of Houston (Leroy I)*, 831 F.2d 576, 586 (5th Cir. 1987). "The applicant should exercise "billing judgment" with respect to hours worked, and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437. "If the applicant's documentation of the hours claimed is vague or incomplete, the district court may reduce or eliminate those hours. *Id.* Hourly records are not too vague if they contain the date, the number of hours spent (calculated to a tenth of an hour), and a short but thorough description of the services rendered by each attorney.[5] *Id.* "Hours which, though actually expended, nevertheless are excessive, redundant,

---

[4] LaGen also asserts that the "forum rule" is inapplicable because New York state courts have failed to adopt it, particularly in cases such as this, where entitlement to attorneys' fees flows from breach of contract rather than statutory fee-shifting. While this may be true, federal courts determining the reasonableness of attorneys' fees in insurance cases similar to the one presently before the Court have conducted their analysis in light of the "forum rule." *See GuideOne Specialty Mut. Ins. Co. v. Congregation Adas Yereim*, No. 1:04-cv-5300 (ENV)(JO). Furthermore, as will be discussed *infra*, courts in the Second Circuit tasked with determining the reasonableness of attorneys' fees are instructed to consider the "forum rule" when conducting the reasonableness analysis. *Id.* at *1 (discussing the guidance provided by the Second Circuit to district courts when evaluating a request for attorneys' fees). Therefore, consistent with this approach, the Court will evaluate the reasonableness of LaGen's attorney's fees in light of the "forum rule".

[5] ILU argues that LaGen's motion for attorneys' fees is improperly supported because though LaGen has supplied redacted invoices, it has failed to provide unredacted ones to either ILU or the Court. The Court has received the unredacted invoices of Dickstein Shapiro LLP, Baker Botts LLP, and Kean Miller LLP by hand delivery. Given that the Court is vested with the responsibility to determine the reasonableness of fees, there is no need for ILU to have unredacted copies of the invoices. The volume of documents that ILU has filed or attempted to file in this matter, including the opinions of two experts, is evidence of ILU's ability to properly challenge LaGen's motions.

or otherwise unnecessary, or which result from the case being overstaffed, are not hours reasonably expended and are to be excluded from this calculation. *Leroy v. City of Houston (Leroy II)*, 906 F.2d 1068, 1079 (5th Cir. 1990).

The Second Circuit has recently outlined a simplified analytical rubric by which to evaluate the reasonableness of attorney's fees. In *Arbor Hills Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections*, 493 F.3d 110 (2d Cir. 2007) *amended on other grounds by* 522 F.3d 170 (2d. Cir. 2008), the court abandoned the "lodestar" method in favor of a "presumptively reasonable fee" in which a court is advised to consider "*all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." 493 F.3d at 117-18.[6] Additionally, and in regards to the forum rule, the court directed district courts to consider an in-district or out-of-district hourly rate as a variable when calculating the presumptively reasonable fee if "it is clear that a reasonable paying client would have paid the higher rates." *Id.* at 119.

In *Simmons v. New York City Transit Authority*, 575 F.3d 170 (2d Cir. 2009), the court had occasion to specifically address the parameters of the forum rule. In *Simmons*, the court established a rebuttable presumption in favor of applying the forum rule. *Id.* at 175. The court provided that,

---

Moreover, and for the same reasons, the Court finds it unnecessary to defer its ruling in order to allow ILU more time to review the invoices to assert more challenges.

[6] While the Fifth Circuit continues to follow the lodestar method, the Court's abidance to the "presumptively reasonable fee" analysis set forth in *Arbor Hill* and its progeny will not result in a decision that offends Fifth Circuit precedent. Indeed, Second Circuit courts are instructed to use the *Johnson* factors announced by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *See Arbor Hill*, 493 F.3d at 118. Moreover, the difference between the two approaches is merely the point in the analysis when district courts make an upward or downward adjustment to the reasonable fee. *Id.* at 115. While the Fifth Circuit directs district courts to calculate the lodestar by multiplying the hours worked by the hourly rate and then determine whether to allow for an upward or downward adjustment in light of the *Johnson* factors, the Second Circuit approach directs district courts to first determine whether the hourly rate is reasonable in light of variables, including the *Johnson* factors, before multiplying the determined reasonable fee by the reasonable hours worked.

7

> [W]hen faced with a request for an award of out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule.  In order to overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result….The party seeking the award must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result….Among ways an applicant may make such a showing is by establishing that local counsel possessing requisite experience were unwilling or unable to take the case, or by establishing, in a case requiring special expertise, that no in-district counsel possessed such expertise.

*Id.* at 175-76 (citations omitted).

Read together, the cases set forth a three-step analysis.  First, a district court must determine whether it should apply an in-district or out-of-district hourly rate in accordance with the guidance set forth in *Simmons*.  *GuideOne Specialty Mutual Ins. Co. v. Congregation Adas Yereim et al*, No. 1:04-cv-5300 (ENV)(JO), 2009 WL 3241757, *1 (Sept. 30, 2009).  Second, the district court must decide if the applicable rate is presumptively reasonable in light of case-specific variables.  *Id.*  Third, the court must use the reasonable hourly rate to calculate the reasonable fee by multiplying the reasonable rate by the hours reasonably expended on the litigation.  *Id.*

In this case, LaGen asks the Court to apply the out-of-district rate of their counsel Dickstein Shapiro LLP, a law firm located in Washington D.C. with another office located in New York City.[7]  ILU challenges this request, arguing that the forum rule applies and that LaGen is bound to the prevailing hourly rates of local counsel practicing in Louisiana.  Applying the "roadmap" provided by the court in *Simmons*, the Court finds that LaGen has overcome the forum rule presumption.  LaGen has made the requisite particularized showing that the selection

---

[7] The hourly rates charged at the Washington D.C. office of Dickstein Shapiro are the standard rates charged by the firm's New York office.  (Doc. 196, at 17-18).

of counsel was predicated on experienced-based objective factors. Specifically, the lead partners on this matter, Marla H. Kanemitsu ("Kanemitsu") and John E. Heintz ("Heintz"), have decades of insurance coverage recovery and complex litigation experience between them. *Declaration of Marla Kanemitsu*, Doc. 161-2, at ¶¶ 8-9. Additionally, Dickstein Shapiro's practice group devoted to litigating insurance coverage claims has extensive experience in handling complex insurance matters. *Id.* at ¶ 6. The extensive expertise possessed by Dickstein Shapiro attorneys was especially necessary to litigate the coverage dispute. As the Court is well aware, the coverage dispute, complicated even more by the complex nature of the underlying action, presented unique and complex issues of environmental and regulatory law and LaGen was facing tens of millions of dollars in potential liability. Despite ILU's conclusory assertion to the contrary, no in-district counsel possessed the level of expertise that Dickstein Shapiro did in complex insurance recovery matters. Therefore, given the complexity of the issues presented in the coverage and underlying action and Dickstein Shapiro's extensive expertise, the Court finds that LaGen has overcome the forum rule presumption and is entitled to the application of out-of-district rates in the calculation of reasonable attorneys' fees.

Turning next to the second step of the presumptively reasonable fee analysis, district courts must determine if the charged hourly rate is reasonable. "The reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill*, 493 F.3d at 117. The reasonable hourly rate is set by evaluating case-specific variables like those presented by the factors outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *Id.* The *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the

>amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases.

*Johnson*, 488 F.2d at 717-19. When determining the appropriate hourly rate, a district court should take "judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Farbotko v. Clinton Cnty of N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005).

ILU argues that the fees charged by Dickstein Shapiro are unreasonably high, specifically honing in on Heintz's hourly rate of $1,000. After reviewing the documents provided by LaGen, including copies of the unredacted invoices, the Court concludes that the hourly rates of (1) Heintz for $,1000; (2) Kanemitsu for $630; and (3) the various associates for between $290-490 are reasonable.[8] Though they are slightly higher than market rates found by other courts, *see Bravia Capital Partners, Inc. v. Fike*, 296 F.R.D. 136, 145 (S.D.N.Y. 2013) (citing cases which found that an hourly rate of $550-425 for partners and $221-325 for associates was reasonable), the Court finds that the complexity of the issues presented; the skill required to perform the legal services properly; the high stakes of the underlying litigation and the favorable results obtained by Dickstein Shapiro; and the experience, reputation, and ability of the firm's attorneys warrants an hourly rate slightly higher than what may be customary in the Southern District of New York.

Specifically addressing Heintz's hourly rate of $1,000, while without context, this hourly rate may seem high, Heintz's decades worth of experience, honed expertise, and the complex nature of the issues involved justify such an hourly rate. Moreover, such a rate is not so uncommon among those with similar credentials, experience, and expertise. *See LaGen Reply Brief*, Doc. 196, at 18-19 (citing Nathan Koppel, *Lawyers Gear Up Grand New Fees*, WALL

---

[8] ILU does not contest the reasonableness of Kean Millers' fees. That said, after reviewing the submitted invoices, the Court finds that they are within the range for attorney's practicing in Southeastern Louisiana.

10

STREET JOURNAL, Aug. 22, 2007, http://online.wsj.com/news/articles/SB118775188828405048) (discussing Barry Ostager, an attorney known for representing insurers in coverage disputes, and his hourly rate of $1,000); *see also* Koppel, *supra* (explaining the growing trend of law firm partners with special expertise billing an hourly rate of $1,000 at the nation's top firms). Finally, it is important to bear in mind that Heintz's rate, as well as those of all Dickstein Shapiro attorneys working on this matter, were subject to a negotiated 10% discount.

Lastly, the Court must determine if the hours expended during the litigation of ILU's duty to defend were reasonable. The Court concludes that such hours were reasonable. The Court is very familiar with the litigation process involved in the coverage action. There was extensive motion practice at various stages of the litigation including battles over the proper venue and jurisdiction, which involved an appeal to the Second Circuit; a battle on the merits of the declaratory judgment before this Court; and an appeal of this Court's decision to the Fifth Circuit. Therefore, after reviewing the unredacted invoices and in reliance upon the Court's intimate knowledge of the litigation process, the Court finds that the hours expended were reasonable.

ILU makes several objections to the fees submitted by LaGen. First, ILU argues that LaGen and its counsel are seeking to impose what amounts to a premium on ILU for amounts that LaGen would not actually have to pay. ILU also challenges the use of vague and block-billed entries. Finally, ILU objects to the inclusion of several allegedly improper charges. In response, LaGen asserts that the fee that ILU refers to as a premium is not a discretionary fee but rather a fee that LaGen committed to pay Dickstein Shapiro for services rendered. LaGen argues that ILU's objection on the basis of block-billing is meritless given that attorneys' fees are authorized as consequential damages of ILU's breach of contract and not by a statutory fee

11

shifting scheme.  LaGen asserts that in any event, there is nothing improper about the use of block-billing.  Finally, LaGen provides justification for each of the allegedly improper charges.

Addressing the alleged premium being imposed on ILU, the Court finds that ILU's argument is based upon a misreading of the Retention Agreement.  (Doc. 161-5, Exh. C. at 3-4).  The Retention Agreement provides that LaGen must pay Dickstein Shapiro both a 20% holdback fee *and* a "success fee" equal to the 20% holdback fee in the event that Dickstein Shapiro's representation resulted in a favorable judgment on the duty to defend issue.  Since Dickstein Shapiro did deliver such a judgment, *see Louisiana Generating LLC v. Illinois Union Ins. Co.*, 719 F.3d 328 (5th Cir. 2013),  Dickstein Shapiro is entitled to, and LaGen is required to pay, both the holdback fee and the "success fee."  Furthermore, for the reasons asserted by LaGen in its brief, the Court finds that ILU's objection to the use of blocked-billing is without merit. (Doc. 207).  Finally, after reviewing the unredacted invoices, the Court finds that invoice entries are not vague.

Turning its attention to ILU's remaining objections, the Court now addresses the allegedly improper charges.  ILU argues that the following charges are improper: (1) charges for online legal research; (2) fees incurred during the filing of Cajun Electric's bankruptcy proceeding; (3) fees paid to Wendy Decker, a former LaGen employee hired in this matter as an independent contractor to compile and review discovery documents; and (4) fees paid to paralegals.  Additionally, ILU alleges that there are issues with discounted rates negotiated by LaGen and requests further time for discovery.

Addressing those objections seriatim, the Court finds that the issue of charges for online legal research has been mooted by the fact that LaGen deducted these charges from the relevant invoice.  *See Declaration of Marla Kanemitsu*, Doc. 181, Ex. 2, Invoice No. 2287227.  The

Court further finds that the filings made concerning the bankruptcy proceedings of Cajun Electric went part and parcel with the underlying action as those filings were a defensive measure taken to help LaGen avoid liability in the underlying action.  Additionally, the Court agrees with LaGen's contention that the hiring of Wendy Decker was not done in order to circumvent the policy against paying fees to salaried employees for work within their scope of employment given that 10 years had elapsed since the work at issue was performed.  Instead, Wendy Decker was hired because she possessed a special knowledge of the documents needed during discovery that no other current employee possessed.  Finally, the Court finds that the fees paid to paralegals are reimbursable.  *See GuideOne Specialty Mut. Ins. Co.*, 2009 WL 3241757 at *5.

Accordingly and for the reasons stated herein, the Court GRANTS LaGen's motion for attorneys' fees, costs, and prejudgment interest. LaGen is entitled to the fees incurred in the amount of $2,403,286.39 plus interest.

### b.  LaGen is entitled to Summary Judgment on Defense Costs

LaGen seeks $7,652,367.31[9] in fees and costs incurred during its effort to defend itself in the underlying action plus prejudgment interest. ILU's liability for these costs is well settled. *Louisiana Generating LLC v. Illinois Union Ins. Co.*, 719 F.3d 328 (5th Cir. 2013).  Thus settled, the issue before the Court is whether the submitted defense cost damages are reasonable.  Both sides reurged arguments asserted concerning LaGen's motion for attorneys' fees.  Specifically, LaGen argues that the costs are entitled to a presumption of reasonableness because at the time of litigation, it was responsible for its own defense costs with no guarantee of reimbursement, and therefore had all the incentive to negotiate a reasonable fee with its counsel and minimize

---

[9] This amount was arrived at by subtracting $35,537.00 for work performed by Baker Botts related to the duty to defend action and $10,504.00 of insurance related amounts from the $7,698,408.31 originally sought in the motion (doc. 175) for summary judgment. *See LaGen Supplemental Memo*, Doc. 188, at 3.

13

costs. Additionally, LaGen notes that Baker Botts was on ILU's list of approved counsel. In response, ILU argues that the costs are unreasonable because the Baker Botts lawyers billed at an hourly rate above that which is customary in the forum. ILU also avers that its approval of Baker Botts was on the basis of competency and not cost.[10] After reviewing the unredacted invoices of LaGen's counsel in the underlying action, the Court finds that the defense costs are reasonable.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." FED. R. CIV. P. 56(a). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.* The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d

---

[10] Here again, ILU requests further time to conduct discovery in order to properly object to the reasonableness of the fees. For the reasons given *supra*, at note 6, the Court declines to defer ruling on this matter. Additionally, ILU has filed a Sealed Motion (doc. 212) for Leave to File Supplemental Memorandum and Exhibit in Opposition which includes an expert report prepared by Katherine Hawke. After reviewing the motion, the Court has decided not to consider the supplemental information. As the Court is tasked with the responsibility to determine the reasonableness of fees, and indeed is more than apt to do so without the aid of expert opinions, the Court finds that such supplemental material is unnecessary.

137, 139–40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991). If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322-23.

As previously mentioned, it is undisputed that ILU owes LaGen for defense costs pursuant to the Policy.  The issue is whether, viewing the evidence in a light most favorable to ILU, the fees submitted are reasonable.  Applying the presumptively reasonable fee analysis set forth *supra*, the Court finds that the fees submitted by LaGen are reasonable.  First, LaGen has overcome the forum rule presumption by showing that Baker Botts was chosen based upon objective criteria and a desire to attain a superior result.  Baker Botts has an expertise in the specific issues involved in the underlying action which LaGen knew from firsthand experience since Baker Botts was NRG's counsel in a similar matter brought by the state of New York. Moreover, the selection of Baker Botts was appropriate given the complexity of the issues presented in the underlying action and the substantial liability that LaGen faced therein. Therefore, LaGen has overcome the forum rule presumption and the Court will use the out-of-district rates to determine the reasonableness of the incurred fees.

Turning its attention to the reasonableness of the hourly rate, the Court agrees that the rate is presumptively reasonable.  Judge Posner's reasoning in *Taco Bell Corp. v. Continental Cas. Co.*, 388 F.3d 1069 (7th Cir. 2004) is particularly persuasive.  There, writing for a unanimous panel, Judge Posner found that the defense costs sought were reasonable because of the uncertainty the plaintiff had concerning whether it would be reimbursed for its defense costs. Judge Posner wrote,

> When [the insured] hired its lawyers, and indeed at all times since, [the insurer] was vigorously denying that it had any duty to defend—any duty, therefore, to reimburse [the insured]. Because of the resulting uncertainty about reimbursement, [the insured] had an incentive to minimize its legal expenses (for it might not be able to shift them); and where there are market incentives to economize, there is no occasion for a painstaking judicial review.

*Taco Bell Corp*, 388 F.3d at 1076-77 (citations omitted). Here, like the court in *Taco Bell Corp.*, the Court is persuaded by the fact that LaGen negotiated payment terms with its counsel after ILU had reneged on its duty to defend and without any assurances that it would be reimbursed for the defense costs incurred. Paying out of pocket gave LaGen every incentive to negotiate a reasonable rate and minimize costs. Furthermore, ILU explicitly approved the use of Baker Botts for its insureds and the Court finds unpersuasive ILU's contention that such approval was solely predicated on competence. Finally, and in light of the *Johnson* factors, the hourly rate charged is reasonable given the time and labor required to litigate the underlying action; the complexity of the issues therein presented; the level of skill and expertise necessary to effectively litigate the action; the amount of liability involved and the results obtained; the experience, reputation, and ability of the attorneys; and the nature and length of the professional relationship with the client. Therefore, the Court finds that the fees sought to be recovered for costs incurred during the defense in the underlying action are reasonable.[11]

      Finally, after reviewing the unredacted invoices, the Court concludes that the hours expended were reasonable in light of the time required to litigate the underlying action and the complexity of the issues that it presented. Furthermore, as the Court concluded *supra*, the Court finds that ILU's arguments concerning block-billed and vague entries lack merit.

---

[11] ILU does not contest the hourly rates charged by forum counsel Kean Miller. Given the lack of opposition and the fact that forum counsels' hourly rates fall within what is customary in the forum, the Court finds that such rates are reasonable.

Accordingly and for the reasons stated herein, the Court GRANTS LaGen's motion for defense costs and prejudgment interest. LaGen is entitled to fees incurred in the amount of $7,652,367.31 plus interest.

### III.     Conclusion

Accordingly, LaGen's motion (doc. 161) for attorneys' fees is GRANTED. Furthermore, LaGen's motion (doc. 175) for summary judgment is GRANTED. LaGen is entitled to recover attorneys' fees, defense costs, and interest in the amount of $11,275,309.64.[12] ILU's Motions (docs. 186 & 187) for Oral Argument and Sealed Motion (doc. 212) for Leave to File Supplemental Memorandum and Exhibit are DISMISSED AS MOOT.

Signed in Baton Rouge, Louisiana, on March 26, 2014.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[12] This final amount consists of the $2,403,286.39 for attorneys' fees incurred during the coverage dispute, $7,652,367.31 for underlying defense costs, and $1,219,655.94 in accrued interests on those amounts since October 23, 2013. (Doc. 188).